# TRUSKETT *v.* CLOSSER.

APPEAL FROM THE CIRCUIT COURT OF APPEALS FOR THE EIGHTH CIRCUIT.

No. 160.   Argued January 28, 1915.—Decided February 23, 1915.

The qualification "except as otherwise specifically provided by law," as used in § 6 of the act of May 27, 1908, 35 Stat. 312, removing restrictions upon alienation of allotments to members of the Five Civilized Tribes, means Federal, not state, law.

The act of May 27, 1908, expressly provides that the Probate Courts of the State of Oklahoma shall have jurisdiction in regard to the disposition of property of minors of the Five Civilized Tribes and that such jurisdiction shall be subject to the rules and regulations to be promulgated by the Secretary of the Interior.

The fact that the laws of the Territory of Oklahoma gave power to the courts to confer upon minors the rights of majority, and that the Enabling Act continued such laws, did not preclude Congress from enacting the provisions of the act of May 27, 1908, in regard to the disposition of allotments of members of the Five Civilized Tribes who were minors. *Tiger* v. *Western Investment Co.*, 221 U. S. 286.

Courts in Oklahoma, both state and Federal, having found that the provisions of the act of May 27, 1908, in regard to disposition of allotments of minors of the Five Civilized Tribes dominated the provisions of state law in that respect, that construction has become a rule of property in the State, and this court would be disposed to adopt it as such even if it doubted the construction placed by those courts upon that act; and *held* that the title under a lease made by a minor's guardian pursuant thereto was superior to that under a lease made by the minor during minority but after removal of disabilities by the state court.

198 Fed. Rep. 835, affirmed.

THE facts, which involve the construction of the act of May 27, 1908, defining restrictions on alienation of allotments by members of the Five Civilized Tribes, and the validity of gas and mining leases made by a member of the Cherokee Tribe, are stated in the opinion.

*Mr. James A. Veasey*, with whom *Mr. Lloyd A. Rowland* was on the brief, for appellants:

The act of May 27, 1908, removed all restrictions against the alienation of allotments of mixed-blood Indians having less than half Indian blood, including minors; Goodman was a minor Cherokee Indian of less than half Indian blood, and, accordingly, all restrictions against the alienation of his land were removed by said act. See Oklahoma Enabling Act; § 2, Schedule Constitution Oklahoma; §§ 73, 74, 75, 733, Wilson's Digest; *Brown* v. *Whealock* (Tex.), 12 S. W. Rep. 111; *Tiger* v. *West. Invest. Co.*, 221 U. S. 286; § 14, Cherokee Treaty, Act of July 1, 1902, 32 Stat. 716; *Bowling* v. *United States*, 233 U. S. 528; *United States* v. *Nichols Lumber Co.*, 234 U. S. 245; § 4, Original Creek Agreement, 31 Stat. 861; Act of April 21, 1904, 33 Stat. 189; § 22, Act of April 26, 1906, 34 Stat. 137. *Jefferson* v. *Winkler*, 26 Oklahoma, 653, distinguished.

*Mr. G. T. Stanford* and *Mr. Eugene Mackey*, with whom *Mr. T. H. Stanford* and *Mr. John H. Brennan* were on the brief, for appellee.

MR. JUSTICE MCKENNA delivered the opinion of the court.

Conflict of oil and gas mining leases derived from the same lessor, one Robert F. Goodman, a member of the Cherokee Tribe of Indians.

Appellee brought suit in the District Court for the Eastern District of Oklahoma to quiet title to his lease against that of appellants covering the same premises. The bill set up the full title of appellee and the full title of appellants, to which appellants demurred. The demurrer was overruled and, appellants declining to plead further a decree was entered quieting the title of appellee

and decreeing the cancellation of the lease of appellants. The decree was affirmed by the Circuit Court of Appeals, 198 Fed. Rep. 835.

The lands in controversy were part of the common domain of the Cherokee Tribe of Indians, and on March 31, 1909, were conveyed to Goodman, a member of the Tribe, by patent of the Cherokee Nation, duly approved by the Secretary of the Interior as his, Goodman's, allotment, fifty acres being his so-called "surplus" allotment and the remaining thirty acres being his homestead allotment.

Goodman was one-eighth Indian blood and seven-eighths white blood and did not attain the full age of twenty-one years until September 25, 1910. Before that date, to wit, on October 12, 1909, in a proceeding brought by his next friend, the District Court of Washington County, Oklahoma, by a decree duly entered, removed from Goodman the disability of minority and conferred upon him the rights of majority concerning contracts and "authorized and empowered him to transact business in general with the same effect as if such business were transacted by a person over the age of twenty-one years." In pursuance of this decree Goodman granted to one Overfield a lease for oil and gas mining purposes covering his entire allotment for the term of fifteen years from its date and as long thereafter as oil or gas should be found in paying quantities. The lease passed to appellants by assignment and constitutes the basis of their title.

On September 14, 1910, that is, subsequent to the decree conferring majority rights upon Goodman and subsequent to the lease under which appellants hold, the legal guardian of Goodman granted a lease in behalf of Goodman to appellee covering the same lands. This lease was both authorized and confirmed by the order of the County Court for Nowata County, Oklahoma, that court then having probate jurisdiction of the person and estate

of Goodman, and Goodman at that time being a minor. This lease is the ground of title of appellee.

The question in the case then is, Of the two leases which constitutes the better title? And a decision of this question, appellants contend, depends upon the construction of the act of Congress of May 27, 1908, c. 199, 35 Stat. 312, special stress being put upon §§ 1 and 4. These sections are as follows: "Section 1. That from and after sixty days from the date of this Act the status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restriction. All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half and less than three-quarters Indian blood shall be free from all restrictions. All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, including minors of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, including minors of such degree of blood, shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April 26, 1931, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

"Section 4. That all lands from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes: Provided, That allotted lands shall not be subjected or

held liable, to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

At the time this act was passed Goodman was a minor of one-eighth Indian blood, and it is hence contended that Goodman having less than one-half Indian blood, his entire allotment was free from all restrictions and was therefore subject to the laws of Oklahoma. And this notwithstanding §§ 2 and 6 of the act, which read respectively as follows: "Section 2. That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper Probate Court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, That leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And Provided Further, that the jurisdiction of the Probate Courts of the State of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this Act, shall include all males under the age of twenty-one years and all females under the age of eighteen years.

"Section 6. That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma. . . ."

These sections are circumstantial and contain the elements of decision. Section 2 defines minors, male and

female, and provides for the disposition of their property under, as stated, rules and regulations provided by the Secretary of the Interior and declares that the jurisdiction of the Probate Courts of the State shall be subject to its provisions. And § 6 declares to what courts the property of minors so defined shall be subject. Explicitly such property is made "subject to the jurisdiction of the probate courts of the State of Oklahoma." The qualification "except as otherwise specifically provided by law" means, as said by the Circuit Court of Appeals, "Federal law, not state law."

Counsel, however, resist that conclusion and contend that the jurisdiction which was made subject to the provisions of the section is yet to be regarded independently of them and subject to the provisions of the local statutes. The reasoning by which this is attempted to be supported is somewhat involved and is difficult to represent succinctly. It is that the enabling act of the State, except as modified, and the constitution of the State continued the laws in force in the Territory at the time of its admission into the Union until they expired or were altered or repealed, and that by those laws minors were defined (§ 733, Wilson's Digest) and other laws gave power to confer upon them the rights of majority. (Sections 73, 74 and 75, Wilson's Digest.) But this did not preclude the exercise of the power of Congress as exhibited in the act of May 27, 1908. *Tiger* v. *Western Investment Co.,* 221 U. S. 286. And the courts, both state and Federal, have found no difficulty in determining its meaning or its dominance over the provisions of the state law. *Priddy* v. *Thompson,* 204 Fed. Rep. 955; *Jefferson* v. *Winkler,* 26 Oklahoma, 653. And we think it is clear that sections 1 and 4 are not to be construed independently of the other sections of the act.

In *Jefferson* v. *Winkler* an Indian girl married when she was under eighteen, and while under that age conveyed

her allotment. It was held that under the general law of ·Oklahoma the marriage emancipated her but that, notwithstanding, her conveyance was void, the act of May 27, 1908, prevailing over the state law. The reasoning of the court is directly antagonistic to that of appellants in the case at bar, the same contentions being urged in that case as in this. In other words, it was contended that § 1 of that act was absolute and was not modified by § 2, and the court, considering all of the provisions of the act, was of opinion that the legislative intention was to provide that the allotted lands of freedmen and mixed-blood Indians of less than half Indian blood, under the age of eighteen if a female, and under the age of twenty-one if a male, might be sold under the supervision and jurisdiction of the probate courts of the State and not otherwise. The court, therefore, decided, upon a consideration of the act of May 27, 1908, and of the laws of the State, that the latter removing the disability of minority do not extend to Indian minors as defined by the act of Congress.

The decision has been followed in *Tirey* v. *Darneal*, 37 Oklahoma, 606. Also *Tirey* v. *Darneal*, 37 Oklahoma, 611.

The construction has become a rule of property in the State and we should be disposed to accept it as such, even if we had doubts of the construction of the act of May 27, 1908. *Reynolds* v. *Fewell, ante,* p. 58.

The other contentions of appellants which have been argued are but phases of those we have reviewed or are determined by the same considerations.

*Decree affirmed.*