McNEE v. WHITEHEAD.

(Circuit Court of Appeals, Eighth Circuit.   October 28, 1918.)

No. 5126.

1. TAXATION ⬤⟶181—INDIAN LANDS.

The Atoka Agreement (Curtis Act) § 29, providing that allotted lands shall be nontaxable while title remains in the original allottee, did not continue the exemption from taxation which a Choctaw Indian of the half-blood enjoyed to his heirs of less than half Indian blood.

2. TAXATION ⬤⟶181—INDIAN LANDS.

Under Act May 27, 1908, §§ 1, 2, 4, 6, 9, relating to restriction on alienation of lands allotted to Indians, and declaring that death of any allottee removed restrictions, *held* that on the death of a half-blood allottee and descent of lands to heirs of less than half Indian blood the lands became subject to taxation prior to their sale through the Oklahoma probate court; the provisions as to minority not changing the matter.

In Error to the United States District Court for the Eastern District of Oklahoma; J. W. Woodrough, Judge.

Action between George A. McNee and James E. Whitehead. There was a judgment for the latter, and the former brings error. Reversed and remanded for further proceedings.

James S. Twyford and Solon W. Smith, both of Oklahoma City, Okl., for plaintiff in error.

F. E. Riddle, of Tulsa, Okl., and J. E. Whitehead, of Oklahoma City, Okl., for defendant in error.

S. P. Freeling, of Oklahoma City, Okl. (Hunter L. Johnson, of Oklahoma City, Okl., on the brief), amicus curiæ.

Before HOOK and STONE, Circuit Judges, and WADE, District Judge.

HOOK, Circuit Judge.   The question in this case is whether lands in Oklahoma allotted to a Choctaw Indian of the half-blood, and therefore exempt from taxation while held by him, become taxable upon his death and the descent of the title to his heirs of less than half Indian blood, prior to their sale through the probate courts of the state. The trial court held them exempt.

[1] There was no vested, contractual right of exemption beyond the power of Congress to abrogate.   The Atoka Agreement (section 29 of the Curtis Act [Act June 28, 1898, c. 517, 30 Stat. 495]) provides that the allotted lands "shall be nontaxable while the title remains in the original allottee," but manifestly this does not apply when the title has passed to his heirs by inheritance.   To hold otherwise would require the judicial interpolation of the words "or his heirs" after the word "allottee," and we are not authorized to make it.

[2] The case really turns upon sections 1, 2, 4, 6, and 9 of the Act of May 27, 1908 (35 Stat. 312, c. 199).   So far as pertinent they are as follows:

Section 1: "That from and after sixty days from the date of this act the status of the lands allotted heretofore or hereafter to allottees of the Five

Civilized Tribes shall, as regards restrictions on alienation or incumbrance, be as follows: All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood including minors shall be free from all restrictions. * * * "

Section 2 provides that the term "minor" or "minors," as used in the act, shall include all males under the age of 21 years and all females under the age of 18 years.

Section 4: "That all land from which restrictions have been or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes. * * * "

Section 6: "That the persons and property of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the state of Oklahoma."

Section 9: "That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, that no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdiction of the settlement of the estate of said deceased allottee. * * * "

As regards restrictions upon the alienation of allotted lands and their exemption from taxation, it was the practice of Congress, recognized by repeated decisions of the courts, to make a clear distinction between those lands still held by the original allottees and those acquired from them by inheritance, and that distinction should be borne in mind in the present case. It is conceded here that, if sections 1, 4, and 9 stood alone, the lands in question would be taxable; but it is argued that the definite prescription of ages of minority and the subjection of the lands of minors so defined to the orders of the local probate courts amount to the imposition of another restriction upon alienation, with its accompanying exemption from taxation, notwithstanding the removal of "all restrictions" in sections 1 and 9. We do not think the argument is sound. Where Congress so unmistakably manifested an intention to remove all restrictions, it would take language more clear than that before us to indicate that it imposed another at the same time. In one sense the definition of minority and the commission of jurisdiction to the probate courts of the state constitute a limitation or restriction but the purpose was to avoid the rules, sometimes loosely applied, of estoppel, waiver, and ratification in respect of the acts of minors and to prevent premature majority by decree of a court or by marriage as provided by state statutes. This was but a recognition and strengthening of the ordinary disabilities of minority in behalf of those of Indian blood, not an exception to the removal of restrictions upon alienation generally.

The judgment is reversed, and the cause is remanded for further proceedings in conformity herewith.