ROGERS et al. v. ROGERS et al.

(District Court, E. D. Oklahoma. October 15, 1919.)

No. 2121.

1. INDIANS ⬥⟹18—WIDOW OF ALLOTTEE DURING COVERTURE INHERITS ONE-THIRD INTEREST; "ACQUIRED."

Under the law of Oklahoma, land allotted to an Indian then married was "acquired" during the coverture, and on his death, his wife surviving, she inherits a one-third interest therein.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Acquire.]

2. INDIANS ⬥⟹16(3)—MINERAL ROYALTIES FROM HOMESTEAD OF DECEASED ALLOTTEE ARE SUBJECT TO SUPERVISION OF SECRETARY OF THE INTERIOR.

Under Act May 27, 1908, § 9, on the death of an Indian allottee of three-fourths Indian blood, leaving a homestead and children born since March 4, 1906, the homestead remains inalienable for the support of such children during their lives until April 26, 1931, and where the land is under oil lease the royalties accruing therefrom constitute a fund the income from which is to be devoted to that purpose until the termination of such special right, when the principal, like the land, is to be divided among the general heirs; their guardian, appointed by the state probate court, not being entitled to the custody of such royalties without the consent of the Secretary of the Interior.

3. INDIANS ⬥⟹16(3)—MINERAL ROYALTIES ACCRUING TO MINOR HEIRS OF DECEASED ALLOTTEE SUBJECT TO SUPERVISION OF SECRETARY OF THE INTERIOR.

The guardian, appointed by the state probate court for minor heirs of a deceased allottee of surplus lands, both decedent and heirs being of three-fourths Indian blood, *held* entitled to receive the royalties accruing to such heirs from oil leases, and to hold and account for the same, subject to the right of the Secretary of the Interior, through regulations prescribed by him, to cause execution of the trust as the law directs.

4. INDIANS ⬥⟹16(3)—WHAT CONSTITUTE "RESTRICTED LANDS."

The second proviso in Act May 27, 1908, § 2, prescribing a federal limitation or restriction as to ages of Indian minors, section 6, subjecting the property of minor's allottees to the jurisdiction of the probate court of Oklahoma, and the proviso of section 4, prohibiting allotted lands from being subjected or held liable to any form of personal claim or demand against the allottees arising or existing prior to removal of restrictions, other than contracts heretofore expressly permitted by law, constitute a limitation or restriction, but not to the extent of making inherited allotted lands "restricted lands," as the term is used in the first proviso of section 2.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Restrict.]

5. INDIANS ⬥⟹16(3)—"RESTRICTION" ON ALIENATION OF MINOR'S LAND.

The term "restriction," as used in the proviso of Act May 27, 1908, § 4, prohibiting allotted lands from being subject, or held liable, to any form of personal claim or demand against the allottees, arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law, comprehends a limitation operating on minors, so that such minors may not convey allotted or inherited tribal land without the intervention of the proper state court exercising probate jurisdiction, and on the agencies of the state, so that such land may not be liable to personal claims or demands arising prior to majority, other

⬥⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

than by contracts permitted by act of Congress, as well as restrictions removed by sections 1 and 9, or thereafter removed in accordance therewith.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Restriction.]

In Equity. Suit by Hazel Rogers and others against Emma Rogers and others. Final decree.

W. P. McGinnis, U. S. Atty., Alvin F. Molony, Sp. Asst. U. S. Atty., J. E. Wyand, J. C. Stone, Francis Stewart, Charles A. Moon, and B. Broaddus, all of Muskogee, Okl., for plaintiffs.

Myron White, of Muskogee, Okl., R. L. Disney, of Ardmore, Okl., W. W. Cotton, of Muskogee, Okl., and A. C. Brewster and Forrester Brewster, both of Pryor, Okl., for defendants.

WILLIAMS, District Judge. The facts are stipulated. Levi T. Rogers was a three-quarter blood Indian citizen of the Cherokee Nation, receiving during his lifetime as his distributive share as a member of said tribe certain tracts of land, respectively, as homestead and surplus allotments, upon both of which he had executed certain oil and gas mining leases. He died intestate on May 19, 1910, seized in fee of all of said allotted land, leaving surviving him, as his children, James Rogers and Emma Johnson, née Rogers, each being three-quarter blood Cherokee citizens, by a former marriage, and so enrolled on the final rolls, and George Rogers, David Rogers, Hazel Rogers, and Levi T. Rogers, Jr., three-quarter blood Cherokee Indians, by his marriage with Susie Rogers, a three-quarter blood Cherokee Indian, who survived him; the said George Rogers, David Rogers, James Rogers, and Emma Johnson, née Rogers, being born prior to March 4, 1905, and the said Hazel Rogers and Levi T. Rogers, Jr., subsequent to March 4, 1906, and not enrolled upon the final rolls of the citizens of the Cherokee Nation.

The questions arising are (1) as to the distributive share of the widow, and (2) the disposition of the royalties, all of which accrued after the death of the intestate.

[1] I. (a) The land in controversy having been allotted to the deceased, Levi T. Rogers, Sr., whilst he was living in lawful wedlock with his second wife, Susie Rogers, who survived him, this allotment was acquired during coverture. Simpkins et al. v. Ware, 45 Okl. 327, 145 Pac. 355.

[2] (b) As to the royalties derived from the homestead, the said Hazel Rogers and Levi T. Rogers, Jr., are entitled to the use of the interest or income which may be obtained by properly investing the same during their lives, until April 26, 1931, leaving the principal to go to the heirs in general on the termination of their special right; their guardian, appointed in the state probate court, not being entitled to the custody of such royalties without the consent of the Secretary of the Interior. Parker v. Riley, 250 U. S. 66, 39 Sup. Ct. 405, 63 L. Ed. 847, decided by the Supreme Court of the United States May 19, 1919; Act May 27, 1908, c. 199, § 9, 35 Stat. 312.

[3] (c) In Parker v. Richard, 250 U. S. 235, 39 Sup. Ct. 442, 63

L. Ed. 954, decided by the Supreme Court of the United States June 2, 1919, it is said:

"Under the act of 1908, as already shown, leases of 'restricted lands' for oil and gas mining may be made with the approval of the Secretary of the Interior, under regulations prescribed by him, 'and not otherwise.' The present lease was made 'and approved under that provision. The land was then restricted and the restrictions have not since been removed. Thus the event which the regulations and the lease declare shall terminate the supervision by the Secretary of the Interior of the collection, care, and disbursement of the royalties has not occurred. Nor has the occasion for some supervision disappeared. The heir is a full-blood Indian, as was the allottee, and is regarded by the act as in need of protection, as was the allottee. In the absence of some provision to the contrary, the supervision naturally falls to the Secretary of the Interior. * · * * There is nothing to the contrary in the leasing provision, or in any other of which we are aware. True, it is possible under the proviso in section 9 for the heir, if the court approves, to sell and convey his interest in the land; but that has not been done, and it well may be that the heir will remain the owner until the restrictions expire in regular course— April 26, 1931. There is nothing in the proviso indicating that it is intended in the meantime to take from the Secretary or to commit to the court the supervision of matters pertaining to the lease or the royalties. A purpose to do that doubtless would be plainly expressed. In this situation we think the authority of the Secretary of the Interior to supervise the collection, care and disbursement of the royalties has not terminated."

The surplus allotment was "restricted land" at the time of the execution of the oil and gas mining lease by Levi T. Rogers, Sr., but all restrictions upon the alienation of any deceased allottee's land were removed by his death, none of the heirs being full-bloods. Section 9, c. 199, 35 Stat. 312.

Section 6, Act of Congress May 27, 1908, c. 199 (35 Stat. 312), provides:

"That the *persons* and *property* [italics mine] of minor allottees of the Five Civilized Tribes shall, except as otherwise specifically provided by law, be subject to the jurisdiction of the probate courts of the State of Oklahoma."

See Yarhola v. Strough (Okl.) 166 Pac. 729; Morrison v. Burnette, 154 Fed. 617, 83 C. C. A. 391; Harris v. Bell, 250 Fed. 209, 162 C. C. A. 345.

In Truskett v. Closser, 236 U. S. 223, 35 Sup. Ct. 385, 59 L. Ed. 549, after referring to sections 1, 2, 4, and 6 of said act, it is said:

"These sections are circumstantial and contain the elements of decision. Section 2 defines minors, male and female, and provides for the disposition of their property under, as stated, rules and regulations provided by the Secretary of the Interior, and declares that the jurisdiction of the probate courts of the state shall be subject to its provisions. And section 6 declares to what courts the property of minors so defined shall be subject. Explicitly such property is made 'subject to the jurisdiction of the probate courts of the state of Oklahoma.' The qualification 'except as otherwise specifically provided by law' means, as said by the Circuit Court of Appeals, 'federal law, not state law.'"

Section 2, referred to, is as follows:

"That all lands other than homesteads allotted to members of the Five Civilized Tribes from which restrictions have not been removed may be leased by the allottee if an adult, or by guardian or curator under order of the proper

probate court if a minor or incompetent, for a period not to exceed five years, without the privilege of renewal: Provided, that leases of restricted lands for oil, gas or other mining purposes, leases of restricted homesteads for more than one year, and leases of restricted lands for periods of more than five years, may be made, with the approval of the Secretary of the Interior, under rules and regulations provided by the Secretary of the Interior, and not otherwise: And provided further, that the jurisdiction of the probate courts of the state of Oklahoma over lands of minors and incompetents shall be subject to the foregoing provisions, and the term minor or minors, as used in this act, shall include all males under the age of twenty-one years and all females under the age of eighteen years."

The Act of April 21, 1904, c. 1402, 33 Stat. 189, providing that "all the restrictions upon the alienation of lands of all allottees of either of the Five Civilized Tribes of Indians who are not of Indian blood, except minors, are, except as to homesteads, hereby removed, * * *" was repealed by substitution by section 1 of Act of Congress May 27, 1908, c. 199, 35 Stat. 312.

Prior to Act of April 21, 1904, the provision as to restrictions on the lands of the Five Civilized Tribes were distinct as to each tribe, whilst said act applies uniformly to all of said tribes. By the Act of May 27, 1908, a uniform and comprehensive system as to the removal of restrictions is provided, not only as to the lands of adults, but also of minors and incompetents, with the exception by way of limitation as to the manner or way by which the alienation or conveyance of lands of minors or incompetents could be made and not otherwise.

In Jefferson v. Winkler, 26 Okl. 663, 110 Pac. 759, it is said:

"In other words, construing all of the foregoing provisions of said act together, we think it was the legislative intent to provide that the allotted lands of freedmen and mixed-blood Indians having less than half Indian blood, under the age of 18, if a female, and under the age of 21, if a male, may be sold under the supervision and jurisdiction of the probate courts of the state, and not otherwise."

As to whether the first proviso in section 2 of Act May 27, 1908, applies to the homesteads and surplus allotments of minors of less than one-half blood, and to the lands other than homesteads of minors of less than one-fourth blood, and not to all the lands of minors, section 1 of said act provides:

" * * * The status of the lands allotted heretofore or hereafter to allottees of the Five Civilized Tribes shall, as regards restrictions on alienation or incumbrance. * * * All lands, including homesteads, of said allottees enrolled as intermarried whites, as freedmen, and as mixed-blood Indians having less than half Indian blood *including minors shall be free from all restrictions.* [Italics mine.] All lands, except homesteads, of said allottees enrolled as mixed-blood Indians having half or more than half or less than three-quarters Indian blood shall be free from *all restrictions.* [Italics mine.] All homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, *including minors of such degrees of blood,* * * * shall not be subject to alienation, contract to sell, power of attorney, or any other incumbrance prior to April twenty-sixth, nineteen hundred and thirty-one, except that the Secretary of the Interior may remove such restrictions, wholly or in part, under such rules and regulations concerning terms of sale and disposal of the proceeds for the benefit of the respective Indians as he may prescribe."

"Restricted lands," as used in the first proviso of said section 2, includes only—

"homesteads of said allottees enrolled as mixed-blood Indians having half or more than half Indian blood, *including minors* of such degrees of blood, and all allotted lands of enrolled full-bloods, and enrolled mixed-bloods of three-quarters or more Indian blood, *including minors of such* degrees of blood." (Italics mine.)

As to the interests of full-blood Indian heirs in tribal or allotted lands descended by inheritance, see Chupco v. Chapman, 247 U. S. 506, 38 Sup. Ct. 427, 62 L. Ed. 1240; Id. (Okl.) 160 Pac. 88, 170 Pac. 259.

Disability occasioned by minority is a personal restriction as to the alienation of allotted lands and full-blood inherited tribal lands by minors, in that the intervention of the proper state probate court exercising such jurisdiction is necessary for the alienation or conveyance of such lands by minors. Talley v. Burgers, 246 U. S. 104, 38 Sup. Ct. 287, 62 L. Ed. 600; First State Bank of Hewitt v. Lowery et al. (Okl.) 178 Pac. 983. In McNee v. Whitehead, 253 Fed. 546, 165 C. C. A. 216, it is said:

"It is conceded here that, if sections 1, 4, and 9 [Act of May 27, 1908, 35 Stat. 312] stood alone, the lands in question would be taxable; but it is argued that the definite prescription of ages of minority and the subjection of the lands of minors so defined to the orders of the local probate courts amounts to the imposition of another restriction upon alienation, with its accompanying exemption from taxation, notwithstanding the removal of 'all restrictions' in sections 1 and 9. We do not think the argument is sound. Where Congress so unmistakably manifested an intention *to remove all restrictions* [italics mine], it would take language more clear than that before us to indicate that it imposed another at the same time. In one sense the definition of minority and the commission of jurisdiction to the probate courts of the state constitute a *limitation or restriction* [italics mine] but the purpose was to avoid the rules, sometimes loosely applied, of estoppel, waiver, and ratification in respect of the acts of minors and to prevent premature majority by decree of a court or by marriage as provided by state statutes. This was but a recognition and strengthening of the ordinary disabilities of minority in behalf of those of Indian blood, not an exception to the removal of restrictions upon alienation generally."

[4] The second proviso to section 2 prescribes a federal limitation or restriction as to ages of such minors, and such disability cannot be affected by state law. Section 6 subjects the property of such minor allottees to the jurisdiction of the probate courts of the state of Oklahoma. The proviso to section 4 prohibits allotted lands from being subjected or held liable to any form of personal claim or demand against the allottees arising or existing prior to removal of restrictions other than contracts theretofore expressly permitted by (federal) law. These constitute a limitation or restriction, but not to the extent of making such inherited or allotted lands "restricted lands" as the term is used in the first proviso to said section 2.

[5] The term "restriction," as used in the proviso to section 4, comprehends the limitation operating on the minor, so that he or she may not convey or alienate such allotted or inherited tribal lands without the intervention of the proper state court exercising probate juris-

diction, and upon the agencies of the state, so that such land should not be subjected or held liable to any form of personal claim or demand against such minor allottees, or heirs, arising or existing prior to their (his or her) majority, as defined by the second proviso in section 2, other than by contracts theretofore permitted by act of Congress, as well as restrictions removed from the allotted lands of minors by section 1, or thereafter removed according to said act, and the restrictions removed by section 9.

Under said provisions no debt could be contracted by such minor or minors, independent of the county or probate court exercising such jurisdiction during minority, which could, either before or after such minor or minors had reached his or her majority, be reduced to judgment and such lands be subjected involuntarily by execution or such process to satisfy such judgment; nor could such lands of minors be sold by any process or governmental agency, except through the intervention of a county or probate court, or court exercising such jurisdiction. Removal of restrictions, as the term "restriction" is used in section 4, includes not only the restrictions removed against the alienation of allotted lands by sections 1 and 9, but also the removal of their disability against alienation occasioned by minority caused by the minor's attaining his majority. Tally v. Burgess, supra; McNee v. Whitehead, supra; First State Bank of Hewitt v. Lowery, supra.

Here the question is as to whether the guardian of the two minors enrolled as three-quarter Cherokees by blood are entitled to receive their part of the royalties accrued subsequent to the death of their said father, freed from any direct supervision by the Secretary of the Interior. In National Bank of Commerce v. Anderson, 147 Fed. 87, 77 C. C. A. 259, it is said:

"The purpose of the statute evidently is that lands inherited from deceased allottees by heirs, who had and were living upon allotments of their own, might be sold and converted into money, rather than remain untilled and unoccupied. It may be admitted that, if the intention of the statute is to terminate the trust as to all lands so sold, and to give the proceeds to the heirs free from restrictions, the Secretary of the Interior had not the power to frustrate that intention in this instance by imposing the terms which were inserted in the petition for leave to sell, and that such terms, notwithstanding that they were assented to by the petitioners, were not binding upon them."

In United States v. Hinkle, 261 Fed. 518, —— C. C. A. ——, it is said:

"We are of the opinion, however, that under sections 19 and 20 of the Act of April 26, 1906 (34 Stat. 137), and section 2 of the Act of May 27, 1908 (35 Stat. 312), and the regulations of the Secretary of the Interior promulgated July 7, 1906, June 11, 1907, and April 20, 1908, the exclusive custody and control of mineral rents and profits derived from *restricted lands of full-blood tribal Indian citizens of the Five Civilized Tribes* [italics mine] is vested in the Secretary of the Interior, subject only to such rules and regulations as he may prescribe, as an independent trust fund, separate and distinct from the trust estate in the land itself. \* \* \*"

The lands covered by the mining lease in the Hinkle Case were inherited tribal lands; the lessor being a full-blood heir. Under section 9, Act May 27, 1908, only as to such interests of full-blood Indian heirs were the conveyances required to be approved by the

state court having jurisdiction in probate matters; all other restrictions as to alienation being removed.

It appears to have been the intention of Congress to terminate the trust of the Secretary of the Interior, so as to place the proceeds of the accrued royalties of the minors in this case under the jurisdiction of the probate courts of the state of Oklahoma.

I conclude that the guardian is entitled to receive the funds arising from the royalties belonging to said minors, all of which accrued after the death of Levi T. Rogers, Sr., and which were collected by the Superintendent of the Five Civilized Tribes, and to hold and account for them as the law directs; the Secretary of the Interior, through his agents, attorneys, and clerks, being empowered, under rules and regulations to be prescribed by him, to take steps to cause such guardian and curators to faithfully execute their trust in the state, county, or probate courts.

An order will be entered in accordance with this opinion.