### SELF v. PRAIRIE OIL & GAS CO.

Circuit Court of Appeals, Eighth Circuit.
September 28, 1928.

No. 7304.

For former opinion, see 19 F.(2d) 481.

L. O. Lytle, of Sapulpa, Okl., and Charles B. Rogers, of Tulsa, Okl. (W. N. Dannenburg, of Tulsa, Okl., on the brief), for appellant.

A. A. Davidson, of Independence, Kan. (T. J. Flannelly and Paul B. Mason, both of Independence, Kan., Preston C. West, Nathan A. Gibson, Roger S. Sherman, and Joseph L. Hull, all of Tulsa, Okl., on the brief), for appellee.

Before KENYON and VAN VALKENBURGH, Circuit Judges, and JOHN B. SANBORN, District Judge.

JOHN B. SANBORN, District Judge. A rehearing was granted in this case upon the petition of the appellant (who will hereinafter be referred to as the plaintiff). This court had held that, the suit being one to quiet title to real property not in the possession of the plaintiff, and the plaintiff having an adequate remedy at law, the court below had no jurisdiction to try it as a suit in equity, although no question of its right to do so had been raised. It was remanded, with directions that it be dismissed for that reason. (C. C. A.) 19 F.(2d) 481. Subsequently the case of Twist v. Prairie Oil & Gas Co. (C. C. A.) 6 F.(2d) 347, one of the authorities upon which reliance had been placed in thus disposing of this case, was reversed by the United States Supreme Court. 274 U. S. 684, 47 S. Ct. 755, 71 L. Ed. 1297. Under the decision of that court, it is clear that the trial court had the power to pass upon the merits of this controversy, and this court the right to review the trial court's action. The case has been reargued.

The plaintiff is a mixed-blood Indian of the Creek Tribe or Nation, to whom was allotted the south half of the northeast quarter and the north half of the southeast quarter of section 21, township 17 north, range 12 east, in Creek county, Okl. Upon the roll of citizenship—which, by section 3 of the Act of Congress of May 27, 1908 (35 Stat. 312), is made conclusive evidence as to the quantum of Indian blood and as to age—he is shown to be of one-sixteenth blood and 7 years of age on the 25th day of August, 1899. During the year last named, his stepfather, Harry M. Walker, was appointed his guardian. On June 25, 1906, the plaintiff, by his guardian, executed to the defendant, the Prairie Oil & Gas Company, an oil and gas lease of his allotted lands, upon a 10 per cent. royalty basis, with the approval of the United States court for the Western district of the Indian Territory. This lease was made subject to the rules and regulations of the Secretary of the Interior, and was approved by him on the 15th day of February, 1906. One of these regulations was that such a lease could only continue during minority, and the lease recited that Buck Self was a minor born November 10, 1890, and provided that the term was to end November 9, 1911, when he was 21 years of age. Under this lease, the defendant went into possession of these lands and operated them for oil and gas.

On April 20, 1908, the Secretary of the Interior made a regulation to the effect that, if the owner of a lease delivered prior to October 14, 1907, in which the royalty was less than 12½ per cent., should stipulate in writing, within 8 years from the date of the lease, to increase the royalty to 12½ per cent. and should show that he had so notified the lessor in writing, the lease should thereafter have all the rights, privileges, conditions, and terms of the lease form approved April 20, 1908, the same as if written therein at length, and that any of the terms and conditions of the lease as originally executed, in conflict with the terms and conditions of the lease form of April 20, 1908, would thereby be revoked and canceled. That lease form, so far as it related to the term and period, was as follows:

"The lessor, for and in consideration of one dollar, the receipt whereof is acknowledged, and of the royalties, covenants, stipulations, and conditions hereinafter contained, and hereby agreed to be paid, observed, and

performed by the lessee, does hereby demise, grant, lease, and let unto the lessee for the term of five years from the date of the approval hereof by the Secretary of the Interior, and as much longer thereafter as oil or gas is found in paying quantities, all the oil deposits and natural gas in or under the following described tract of land, lying and being within the county of * * * and state of Oklahoma, to wit."

On October 17, 1911, and prior to the expiration of the lease of June 25, 1906, the defendant entered into a lease with the plaintiff on a 12½ per cent. royalty basis, with the consent of his guardian, Walker, and, on the 10th day of November following, the plaintiff ratified and re-signed the lease, and the defendant paid, as consideration for it, $65,000, upon the belief that the plaintiff was of age at that time and had a right to make such a lease. Shortly thereafter, M. L. Mott, the attorney for the Creek Nation, filed a petition in the county court of Creek county, Okl., in the Matter of the Guardianship of William Buck Self, charging misconduct on the part of the guardian, Walker, and a conspiracy between Walker and the defendant to defraud the plaintiff of his rights in the lands in question, because of the execution of this lease. The matter was heard by the court on April 13, 1912. Counsel had been appointed by the court for the plaintiff upon his own petition. At the hearing, the plaintiff, his guardian, Harry M. Walker, and M. L. Mott, the petitioner, were all represented by counsel. Evidence was taken, and at the close of the hearing the court determined that the plaintiff was born November 10, 1890, and was of full age on November 10, 1911; that because of his enrollment, however, he was still a minor, and that this guardianship should continue until he reached the age of 21 years as shown by the rolls (August 25, 1913); that the allegations as to fraud and conspiracy were without foundation; that the lease of October 17, 1911, was executed in good faith by all the parties thereto and for the best interests of the plaintiff; that the consideration paid was adequate and the full value of the lease. The court thereupon approved the lease and authorized and directed the guardian to sign, execute, acknowledge, and deliver the same to the defendant. Pursuant to that order and direction of the court, the guardian did sign, execute, and acknowledge the lease as guardian of the plaintiff, on May 20, 1912, and the court indorsed its approval upon it. Thereafter the defendant continued in possession of the lands under the lease, without

objection, and paid to the plaintiff, or to his mother for him, the stipulated royalties.

On the 6th day of December, 1913, after he was of full age as shown by the rolls, the plaintiff entered into another agreement with the defendant, which recited that the defendant was the owner of an oil and gas lease upon the lands referred to, and provided that it might make attachments to all of the wells then operated on the lands, for the purpose of saving the casing-head gas, and that it should pay to the plaintiff one-eighth of the gross receipts derived from the sale of such gas, at the rate of not less than 4 cents per thousand cubic feet. The answer of the defendant shows that on April 22, 1914, the plaintiff leased to the defendant the surface of these lands, at a rental of $150 a year, for one year, and, at the option of the defendant, from year to year thereafter; but there appears to be no evidence to prove that such was the fact.

On November 11, 1911, the plaintiff had given a deed of these lands to his mother, Florence Walker, to whom was paid by the defendant the consideration for the lease of October 17, 1911, and who received and paid over to the plaintiff such consideration and all moneys accruing under the lease. The mother has and claims no title to the lands in question by virtue of this deed; and whatever she has done in connection with the lands has been done for her son.

In September, 1925, more than 12 years after the plaintiff had become of age according to the rolls, he brought this suit, seeking to have the lease of October 17, 1911, removed as a cloud upon his title, to have the title quieted in him, and for an accounting of the oil and gas taken from these lands. He makes the same claim here with reference to fraud and overreaching as was made for him in the county court upon the petition for the removal of his guardian. He also alleges that the lease was made while he was a minor, and was void under section 5 of the Act of Congress of May 27, 1908 (35 Stat. 313); that he is therefore the owner of these lands free from this encumbrance, and is entitled to have paid over to him the profits from the sale of oil and gas taken therefrom.

The defendant's claim is that there was no fraud, that the lease of October 17, 1911, amounted in effect to an extension of the lease of June 25, 1906, in accordance with the regulations of the Secretary of the Interior, and that, if it was not such an extension, the approval of the county court made the lease a valid one, and, furthermore,

that it has been adopted by the plaintiff, and that he is estopped from asserting its invalidity by reason of laches, and that his suit is barred by the statute of limitations.

The case was tried; the plaintiff did not appear in court; evidence was taken; and, at the close of the plaintiff's case, the court dismissed the action for want of equity, stating that in his opinion the plaintiff had adopted the lease, and referring in his remarks to the absence of the plaintiff from the courtroom and his evident lack of interest in the proceedings.

The plaintiff, by his assignments of error, questions the right of the court to thus dispose of his case.

If the lease was a valid lease after its approval by the county court, or if, being an invalid lease during the plaintiff's minority, he, upon reaching his majority, adopted it, the court was justified in dismissing this action.

We are of the opinion that the lease in question cannot be treated as an extension of the prior lease of 1906 under the regulation of the Secretary of the Interior of April 20, 1908. The Act of May 27, 1908 (chapter 199, 35 Stat. 312, 313), provided that all lands of mixed-blood Indians having less than half Indian blood, including minors, should be free from all restrictions, that the persons and property of minor allottees of the Five Civilized Tribes, except as otherwise specifically provided by law, should be subject to the jurisdiction of the probate courts of the state of Oklahoma, and that any attempted lease of the restricted land made in violation of law, before or after the approval of the act, should be absolutely null and void. Therefore, after the going into effect of this act, leases and extensions of prior leases of minor allottees—who were defined by the act to be males under the age of 21 years and females under the age of 18 years—could only be made in the manner permitted by the act, which in the case of the plaintiff called for such procedure as the state law required for the making of an oil and gas lease of a minor's lands. Truskett v. Closser (C. C. A.) 198 F. 835; Truskett v. Closser, 236 U. S. 223, 35 S. Ct. 385, 59 L. Ed. 549; Jefferson v. Winkler, 26 Okl. 653, 110 P. 755.

It appears that from the time of statehood until July 15, 1914, when the Supreme Court of Oklahoma adopted Probate Rule 9 (47 Okl. xiv, xvi; 171 P. vii, viii), which prohibited the making of such leases at private sale, the only requirement of law was that such leases were to have the approval of the county court.

In Duff v. Keaton, 33 Okl. 92, 97, 98, 124 P. 291, 42 L. R. A. (N. S.) 472, it was pointed out that at common law a guardian had the right to lease the property of his ward without the consent of any court, and it was stated that the statutes of Oklahoma did require the approval of a guardian's lease by the county court, but that such statutes were "entirely lacking as to any specific provision for the procedure to be followed by the guardian in leasing the lands of his ward for agricultural or grazing or commercial purposes or for exploring for oil or gas," that the section of the Oklahoma statutes relating to sales of real or personal property of minors did not apply to the making of such leases, and that the section which required the approval of the court was section 5513, Comp. Laws 1909, which reads as follows:

"The county court, on the application of a guardian or any person interested in the estate of any ward, after such notice to persons interested therein as the judge shall direct, may authorize and require the guardian to invest the proceeds of sales, and any other of his ward's money in his hands, in real estate, or in any other manner most to the interest of all concerned therein; and the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require."

In Mallen v. Ruth Oil Co. (D. C.) 230 F. 497, 501, Judge Campbell said:

"So I conclude that, when the Legislature authorized the guardian to lease the ward's property for oil and gas purposes with the approval of the county court, without specifically limiting the time for which such lease might be made to the period of minority, it intended to leave the matter to the judgment of the court in the light of what might appear to be for the best interest of the minor's estate, and that where such interest, in the judgment of the court, would be best subserved by a lease for a term extending beyond minority, a lease for such a term made by the guardian and approved by the court is valid. And of course, when the county court, by approving such a lease, has manifested his finding that such lease is for the best interests of the estate of the minor, that finding is impervious to collateral attack."

In Jackson v. Gates Oil Co., 297 F. 549, 556, the Circuit Court of Appeals of this circuit, after reviewing the decisions of the state court upon the subject, said:

"The question was again considered in Papoose Oil Co. v. Swindler [95 Okl. 264]

221 P. 506, in which it was expressly held that the execution of an oil and gas lease is not a sale of either real estate or personal property within the meaning of the statutes prescribing the procedure for sale of a minor's real estate and personal property. The preceding cases on the point are reviewed. It is pointed out that as early as Duff v. Keaton it was held that the statutes of Oklahoma were entirely lacking as to any specific provision for procedure by the guardian in leasing the lands of his ward for agricultural, grazing or commercial purposes, or for exploring for oil or gas, and that it was held in that case that the only statutory provision applicable to the subject was one requiring that the probate court make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects of the ward as circumstances require, and that the approval by the probate court of a lease by a guardian was all that was required, that neither competitive bidding, nor notice, nor prior authorization of the court was necessary. * * *

"We are thus persuaded that appellant's principal contention is not sound, and are of opinion that the probate order approving the lease in question was the only order required."

In Clayton v. Tibbens (C. C. A.) 298 F. 18, affirming Tibbens v. Clayton (D. C.) 288 F. 393, which latter case contained an exhaustive statement and review of the laws and decisions of Oklahoma relating to the making of oil and gas leases of minors' lands, it was also held that prior to Probate Rule 9, the only requirement of the law was the approval of the county court under the provision of section 5513 of the Compiled Laws of Oklahoma 1909, that "the county court may make such other orders and give such directions as are needful for the management, investment and disposition of the estate and effects, as circumstances require." See, also, Jones v. Prairie Oil & Gas Co., 273 U. S. 195, 47 S. Ct. 338, 71 L. Ed. 602.

No case has been cited, and we have found none, which holds that a formal petition by a guardian for the approval of an oil and gas lease was necessary at the time the lease in question here was made and approved, and the statute is silent as to any form of procedure.

In Hoyt v. Fixico, 71 Okl. 103, 104, 175 P. 517, 518, in which an oil and gas mining lease of an Indian, extending beyond minority, was under consideration, the Supreme Court of Oklahoma said:

"Assuming that a petition was necessary to authorize the court to approve such lease when executed, the petition actually filed was sufficient to challenge the jurisdiction of the court, and the court was possessed of jurisdiction to approve conveyances of this general character. The facts which made it necessary for a lease to be executed were fully set out in the petition and were such facts as to authorize the court in its best judgment to approve a lease which it deemed for the best interest of the minor, even though it extended for a time beyond majority. Cabin Valley Mining Co. v. Hall, 53 Okl. 760, 155 P. 570, L. R. A. 1916F, 493. This proceeding is a collateral attack upon the order approving the lease. Moffer v. Jones, 67 Okl. 171, 169 P. 652, and cases cited. And though the petition be defective and does not contain some essential allegations, these defects in the petition are not fatal to the jurisdiction of the court, because the order approving the lease constituted an adjudication upon all the facts necessary to give jurisdiction, and whether such facts existed or not is wholly immaterial when the order is not reviewed or attacked on appeal. The county court was vested with jurisdiction and power to determine the sufficiency of the petition and, in approving the lease, necessarily held the petition to be sufficient, and its judgment thereon is not void upon collateral attack. Welch v. Focht, 67 Okl. 275, 171 P. 730 [L. R. A. 1918D, 1163]."

We reach the conclusion, after examining the decisions upon the subject, which have been reviewed and cited in the federal cases hereinbefore referred to, that, at the time in question, the only requirement to make an oil and gas lease by a guardian of his ward's lands valid was an order approving the lease by the county court having jurisdiction.

We have also reached the conclusion that the county court of Creek county had jurisdiction to approve the lease under consideration. It is claimed that the lease was not made by the guardian, but was made by the plaintiff. It is true that the plaintiff signed it at a time when his guardian and the defendant believed him to be of age, but the lease was negotiated by the guardian for the plaintiff, and, to all intents and purposes, was made by the guardian. The plaintiff being as a matter of law still a minor, the guardian was accountable for the purchase price of the lease and the royalties received under it during minority. It is true that the record does not show that the guardian petitioned the county court for the approval of the lease. The question of the propriety of the lease arose upon the inquiry of the court into the

conduct of the guardian in making it. If the lease was honestly entered into and was for the best interest of the minor, there was no occasion for the removal of the guardian, and common sense would seem to dictate that whatever action was necessary should be taken to continue the lease in force and effect. All parties interested were before the court. The court had jurisdiction of the person of the minor and of his estate under the act of Congress, and, under the statutes of Oklahoma, had the right to give such orders and directions as were needful for the management, investment, and disposition of the estate and effects of the minor. We are satisfied that the court had the power to approve the lease under the circumstances and to direct the guardian to execute it. There could be no question of the right of the court to approve a new lease identical in its provisions, and, if it might order or direct the guardian to make a new lease, we see no reason why it could not approve and direct that he execute the one which he had negotiated. The plaintiff says that the guardian executed the lease over his (the guardian's) protest. That is not borne out by the evidence. It would appear that he took an exception to the order of the court. However, he signed the lease and acknowledged it to be his free act and deed; he sought no review of the action of the county court; and he accepted the benefits of the lease for his ward. The informality of procedure will not subject the order of the county court approving the lease to collateral attack. Hoyt v. Fixico, supra; Mallen v. Ruth Oil Co., supra.

■ But, even if the lease were invalid, we would still be of the opinion that Buck Self was not entitled to have it removed as a cloud upon his title, or to an accounting for oil and gas taken after he became of age. After he reached his majority, he and his lands were free from all restrictions, and he could do anything with them which he saw fit. It is conceded that he might then have made a new lease identical with the lease in question, but it is asserted that the only way he could do that was by an instrument in writing. If the lease was null and void, it imposed no obligation upon him and he was a stranger to it, and the defendant acquired no interest in his allotment by virtue of it. Whatever its status may have been, however, it was the basis of the claimed right of the defendant to retain possession and operate for oil and gas. The plaintiff, upon reaching his majority, had full knowledge of all of the facts and circumstances surrounding the making of the lease. He continued for some 12 years and

right up to the time of the trial to collect the royalties. He made a casing-head gas lease shortly after becoming of age, reciting that the defendant had an oil and gas lease upon the property. Everything he did with respect to this land, up to the commencement of his suit, if not actually up to the time of trial, was consistent only with the theory that the lease was his lease, and absolutely inconsistent with any other reasonable theory. He must be held to have adopted it. He could not have his cake and eat it too. He could not accept the benefits of the lease and repudiate its obligations.

The Supreme Court of the United States, in Wiggins Ferry Co. v. O. & M. R. Co., 142 U. S. 396, 408, 12 S. Ct. 188, 192 (35 L. Ed. 1055), said:

"It is not necessary that a party should deliberately agree to be bound by the terms of a contract to which he is a stranger, if, having knowledge of such contract, he deliberately enters into relations with one of the parties, which are only consistent with the adoption of such contract. If a person conduct himself in such manner as to lead the other party to believe that he has made a contract his own, and his acts are only explicable upon that theory, he will not be permitted afterwards to repudiate any of its obligations."

See, also, Swift & Co. v. Detroit Rock Salt Co. (C. C. A.) 233 F. 233; Central Improvement Co. v. Cambria Steel Co. (C. C. A.) 210 F. 700; Taenzer & Co. v. Chicago, etc., R. Co. (C. C. A.) 170 F. 245, 246, 247; Chicago, etc., R. Co. v. Chicago, etc., Coal Co., 79 Ill. 121; Capps v. Hensley, 23 Okl. 311, 100 P. 515; Fry v. Wolfe, 106 Okl. 289, 234 P. 191; Mondragon v. Mondragon, 113 Tex. 404, 257 S. W. 215; Lasoya Oil Co. v. Zulkey, 40 Okl. 690, 140 P. 160; Perkins v. Middleton, 66 Okl. 1, 166 P. 1104; Scott v. Signal Oil Co., 35 Okl. 172, 128 P. 694; Carlile v. National Oil & Development Co., 83 Okl. 217, 201 P. 377, 391.

In Capps v. Hensley, supra, the Supreme Court of Oklahoma held that a lease of a minor Indian was void, but that where, after the death of the minor, his guardian and sole heir accepted the rent, he adopted the lease. The court said (page 518 of 100 P. [23 Okl. 320]):

"We believe that no one will contend that a contract such as is here involved, was one that the infant could not have made after she attained her majority. If she could make it, then there is no doubt in our mind about her power to adopt it, or affirm it should she so elect. And the same power over this prop-

erty and contract which the infant would have possessed after attaining majority had she lived, on her death could be exercised by the father to the extent of his estate after he came into possession of it. We think there can be no doubt but that had the infant in this case survived, and had she attained her majority, during the term of this contract, and had she received the money under it just as her father did, it would have amounted to an adoption or affirmance of it."

In Carlile v. National Oil & Development Co., supra, we note this language, on page 387 of 201 P. (83 Okl. 228):

"But a transaction involving the property of a minor that is absolutely void he cannot ratify upon the theory that the contract is non-existent and there is nothing to ratify, but the authorities seem to hold that after the full knowledge of the transaction is brought home to the minor, after he becomes of age, he may adopt or affirm it as his own contract, in other words, make a new contract, and such will bind him."

 The adoption of the lease by the plaintiff, assuming that it was of no force and effect during his minority, created a new lease commencing with his majority. It did not estop him from asserting that it was null and void prior to that time. If the lease was null and void, it was so because of the provisions of the Act of May 27, 1908, not having been made in the manner permitted by that act. It is claimed that because of the Creek Supplemental Agreement (32 Stat. 500, Act of June 30, 1902) the lease was "absolutely void and not susceptible of ratification in any manner, and no rule of estoppel shall ever prevent the assertion of its invalidity." Assuming that such language would prevent the adoption of an unlawful lease by one sui juris, we think that the Act of May 27, 1908, governs the lease here in question and prescribes the legal effect of any failure to have it properly approved by the county court.

 The mere fact that the plaintiff is part Indian does not exempt him from the legal effect of his own conduct or neglect. See Felix v. Patrick, 145 U. S. 317, 12 S. Ct. 862, 36 L. Ed. 719; Bluejacket v. Ewert (C. C. A.) 265 F. 823; Lemieux v. United States (C. C. A.) 15 F.(2d) 518.

The position which we have taken with reference to the lease makes it unnecessary for us to discuss the sufficiency of the evidence of fraud. However, it may as well be said that we have considered it. The claim made in this case is obviously the same as was made before the county court on behalf of the plaintiff by the attorney for the Creek Tribe, namely, that a conspiracy existed between the guardian, Walker, and the defendant to make a lease for an inadequate consideration, and that Walker was subsidized to take the plaintiff out of the state to prevent his ascertaining the value of the property and to keep others from bidding for a lease. Walker was the plaintiff's main witness, and he denies that he had any improper motives in doing what he did. In fact, his testimony is more consistent with the theory that his purpose was honest than that it was dishonest. There is no evidence of inadequacy of consideration or of overreaching. If the guardian received money which belonged to his ward, he can be made to account for it. The method used by the defendant to insure its getting the lease is not to be commended, but we have no quarrel with the findings of the county court on the question of fraud, which put that question at rest.

For the reasons stated, the decree is affirmed.