### SLEMP v. CITY OF TULSA et al.

No. 19041.   Opinion Filed Oct. 8, 1929.

Randolph, Haver, Shirk & Bridges, for plaintiff in error.

Thomas D. Lyons, Conn Linn, and M. C. Spradling, for defendant in error City of Tulsa.

Philip Kates and West, Gibson, Sherman, Davidson & Hull, for interveners.

HERR, C. On the 22nd day of December, 1909, the city of Tulsa, by proceedings in the district court of Tulsa county, condemned for park purposes 33 acres of land belonging to plaintiff, Helen M. Slemp. This tract was, at said time, situated beyond the corporate limits of said city. Plaintiff was, at said time, a minor of 14 years of age and a one-fourth degree blood Creek Indian, and the land condemned constituted a portion of her surplus allotment.

On the 23rd day of September, 1925, plaintiff brought an action in the nature of ejectment against the city of Tulsa to recover said premises. The city of Tulsa, as a defense, relied on the condemnation proceedings, and pleaded same as a bar to plaintiff's action, and also pleaded estoppel and dedication by conduct. Numerous property owners owning property adjacent to the land in controversy intervened in the action, and joined the city of Tulsa in defending the same. The trial court rendered judgment in favor of defendant and interveners. Plaintiff appeals.

It is contended by plaintiff that the judgment condemning the land is void; that the district court of Tulsa county was without jurisdiction for the reason that the land was restricted and, therefore, not subject to condemnation. We do not agree with this contention.

Plaintiff being of one-quarter degree blood, even though a miner, restrictions against her land, both surplus and homestead, were removed by section 1 of the Act of Congress of May 27, 1908. After the taking effect of this act, her allotment was subject to alienation and subject to condemnation in like manner as property of other citizens and no federal law operated to divest the district court of jurisdiction to condemn the same.

It is, however, argued by plaintiff that the restriction of minority still existed against plaintiff at the time her land was taken, and that this restriction could only be removed by a sale through the probate court as provided by section 6 of said act; that because of this restriction, the judgment assailed is void. Numerous authorities are cited to sustain this contention, but these authorities are not controlling, as a different proposition is here presented. In all of the cases cited the Indian minor's land was sold under provision of the state statute and in violation of the governing act of Congress. These sales were held void, not because of any restriction against alienation, generally, but because sold in violation of the acts of Congress and in a manner different from that prescribed by such acts. In the instant case, the trial court, in rendering its decree of condemnation, was not acting in violation of any federal law, but, on the contrary, acting under specific authority granted by such law. This authority, in our opinion, is granted by section 4 of the act above mentioned, which provides:

"That all land from which restrictions have been, or shall be removed shall be subject to taxation and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes; provided, that allotted lands shall not be subjected, or held liable, to any form of personal claim, or demand, against the allottees arising or existing prior to the removal of restrictions, other than contracts heretofore expressly permitted by law."

We are not unmindful of the fact that the taxation provision of this section was, to a certain extent, held void by the Supreme Court in the case of Choate v. Trapp, 224 U. S. 665, but the court so held because of the nontaxation provision of the Curtis Act, which provision was therein inserted because of a treaty entered into between the government and Indian Tribes, which treaty amounted to a property right, which right could not, under the federal Constitution, be abrogated by Congress. This reason does not apply to the provision of the section imposing all other civil burdens upon land from which restrictions have been removed, as is said by the Supreme Court in the Choate Case, supra:

"The removal of restrictions on alienation of Indian allotments falls within the power of Congress to regulate Indian affairs, but the provision of nontaxation is a property right and not subject to action by Congress."

The restrictions upon alienation of the land in question were removed by section 1 of the act, and the same was thereafter, subject to the eminent domain laws of the state under section 4, notwithstanding the minority of plaintiff, as this section imposed this burden upon her allotment regardless of her age.

In the case of McNee v. Whitehead, 253 Fed. 546, the Circuit Court of Appeals held:

"Under Act May 27, 1908, secs. 1, 2, 4, 6, 9, relating to restrictions on alienation of lands allotted to Indians and declaring that death of any allottee removed restrictions, held, that on the death of a half-blood allottee and descent of lands to heirs of less than half Indian blood, the lands became subject to taxation prior to their sale through the Oklahoma probate court; the provisions as to minority not changing the matter."

The rule announced in the above case and the reason upon which it is based apply with equal force to the case at bar. The judgment assailed is not inhibited by federal law, and is, therefore, not void on the federal question raised.

Defendant and interveners call our attention to section 11 of the Act June 28, 1898 (30 Stat. at L. 495), and section 3 of Act March 3, 1901 (31 Stat. at L. 1058). These sections specifically confer authority upon cities to condemn lands of Indian citizens, members of the Five Civilized Tribes, for public purposes regardless of restrictions.

Plaintiff contends that these acts have been repealed by later acts, at least in so far as they affect the Creeks, and calls our attention to section 20 of the Act June 30, 1902, commonly known as the Supplemental Creek Agreement. Under the view taken, it is not necessary to determine whether or not this act repeals the former acts authorizing cities to condemn allotted lands of Indian Creek citizens, as, in our opinion, section 4 of the Act May 27, 1908, subjects all lands of the Five Civilized Tribes upon which restrictions have been removed to laws of eminent domain of the state, regardless of age. In our opinion, this is one of the burdens imposed upon such lands by the terms of said section.

It is next contended that the judgment is void because the land condemned was beyond the corporate limits of the city. It is argued that at the time these proceedings were had, the statute did not authorize cities to condemn land for park purposes lying beyond its corporate limits. Section 4851, C. O. S. 1921, is cited in support of this contention. This section expressly limits the right in cities to acquire land for park purposes lying within its corporate limits. This section was enacted in 1905, and appears in the 1905 Session Laws, at page 135.

In 1908 the Legislature passed an act authorizing cities of more than 2,000 inhabitants to acquire by condemnation proceedings lands for park purposes within or without the corporate limits of such cities. This authority is granted by section 3 of the act, Session Laws 1907-08, page 192, and is, in part, as follows:

"Every municipal corporation within this state shall have the right to engage in any business or enterprise which may be engaged in by a person, firm or corporation, by virtue of a franchise from said corporation, and every city containing a population of more than 2,000 inhabitants shall have the right and power to acquire, own, and maintain, within or without the corporate limits of such city, real estate for sites and rights of way for public utility and park purposes. * * *"

This act became effective May 22, 1908, and appears as section 800, Comp. Laws 1909, and as section 4507, Comp. Stat. of 1921, and was in force at the time the land in question was condemned. The city of Tulsa was authorized to condemn the land.

It is further contended that the judgment is void for the reason that the record fails to show that notice was given as provided by section 5505, C. O. S. 1921. It appears from the record that part of the files in the original proceedings were lost, and could not be produced at the trial. The original notice was among the missing papers. It was stipulated between the parties that a copy of this notice was certified to by the Title Guaranty & Trust Company as being a part of its record, was a true and correct copy of the notice served, and that the same might be admitted in evidence. The copy of the notice so certified appears to have been unsigned, and for this reason it is contended that the notice and judgment based thereon is void.

The order appointing appraisers recites that proper notice was given, and like recitation appears in the order confirming the report of appraisers. It having been shown that the original notice was lost, the mere showing that the copy of the notice as prepared by the Title Guaranty & Trust Company was unsigned is not sufficient to overthrow these recitals, and does not establish the invalidity of the judgment on the face of the judgment roll. The judgment is not, for this reason, void.

It is finally contended that the judgment is void for the reason that no guardian ad litem was appointed for the plaintiff in the original proceeding. It appears from the copy of the notice introduced in evidence that notice was duly served upon plaintiff and her guardian. It also appears that plaintiff was represented by her guardian.

In these circumstances, the judgment is not void because of the failure to appoint a guardian ad litem. 31 C. J. 1121, announces the following rule:

"While in some jurisdictions it has been held that a judgment against a minor not represented is void, subject to collateral attack, without resort to an appeal or action of nullity, the weight of authority is to the effect that, where the court has otherwise jurisdiction, a judgment or decree rendered against an infant without the appointment of a guardian ad litem, while it may be erroneous, and subject to be reversed or set aside or to be ground for a new trial, at most is only voidable, but not absolutely void."

In the case of Baldridge v. Smith, 76 Okla. 36, 184 Pac. 153, this court says:

"Under section 4957, Mansfield's Digest, the failure to appoint a guardian ad litem for an infant defendant when properly served is not such a jurisdictional defect as will render the judgment void, but at most it is voidable, and hence the judgment remains in full force and effect until it is reversed on appeal or error or set aside by direct proceedings, but is not subject to collateral attack."

See, also, Steil v. Leverett, 133 Okla. 300, 272 Pac. 412.

The judgment, not being void on its face, was not subject to collateral attack, and the trial court ruled correctly in rendering judgment in favor of defendant and interveners.

Judgment should be affirmed.

BENNETT, TEEHEE, FOSTER, and LEACH, Commissioners, concur.

By the Court: It is so ordered.

Note.—See "Eminent Domain," 20 C. J. §74, p. 587, n. 30; §441, p. 1058, n. 26. "Infants," 31 C. J. §266, p. 1122, n. 7, 8.