## KERSEY, Guardian, v. McDOUGAL.

No. 10788—Opinion Filed July 13, 1920.

(Syllabus by the Court.)

1. **Guardian and Ward—General Guardian of Minor—Control by Court.**

By the laws of this state, a general guardian of a minor is a guardian of the person or of all the property of the ward within this state, or of both, and in all cases the court making the appointment of a guardian has exclusive jurisdiction to control him in the management and disposition of the person and property of his ward.

2. **Same—Power of Guardian—Suspension and Termination.**

A guardian appointed by a court has power over the person and property of the ward unless otherwise ordered, and such power is suspended only by order of the court, or if the appointment was made solely because of the ward's minority, by his obtaining majority, and if the guardianship be over the person only of the ward, by the marriage of the ward.

3. **Same—Order Removing Ward's Property to Another State—Liability of Guardian.**

In a general guardianship proceeding regularly pending in the county court in this state, where an order is made removing the personal property of the ward to another state and authorizing the guardian in that state to sue for and receive the same in his own name for the use and benefit of his ward, and the county court in this state by order continues the local guardianship and the local guardian takes the receipt of the foreign guardian for the personal property delivered to him, and files such receipt with the county court in this state, the local guardian is discharged from liability on account of the property so removed only.

4. **Same—Transfer of Property to Foreign Guardian—Effect—Appointment of New Local Guardians—Powers.**

While a general guardianship was regularly pending in the county court of Tulsa county, in this state, over the estate of a minor, the guardian, with the consent of said court regularly obtained, removed with said minor to the state of Colorado, where both became personally domiciled in El Paso county, in said state, and thereafter said guardian, who was the father of said minor, procured the appointment of another by the county court of said El Paso county as guardian of said minor. Thereafter such foreign guardian regularly made his application as such guardian to the county court of Tulsa county for an order transferring the personal property situated in this state belonging to the estate of said ward to El Paso county, Colorado, and at a time when one M, was the regularly appointed and acting guardian of said minor in the guardianship proceeding pending in Tulsa county, Oklahoma. The foreign guardian's application for the transfer aforesaid was denied. From said order of the county court, the applicant appealed to the district court of Tulsa county, which court thereafter granted the application of said foreign guardian and made the order of transfer as prayed for by said foreign guardian. From this order of the district court so made, M., the local guardian, appealed to the Supreme Court of this state. Thereafter the local guardian, M., was removed by order of the county court of Tulsa county, and K. and C. were appointed guardians in his stead, who duly qualified as such and entered upon the discharge of their duties. Thereafter the county court of Tulsa county ordered M., the former guardian, to file his final account as such in said court, which he did, to which final account the guardians, K. and C., filed written exceptions under which they undertook to surcharge the former guardian, M., with various items, aggregating a large sum. Thereafter, at a hearing in the county court of Tulsa county, an order was made settling said account, from which order the guardians, K. and C., appealed as to both law and facts to the district court of said county. Thereafter, on the motion of the former guardian, M., said appeal was by said court dismissed for the sole reason that when the county court of Tulsa county made the order to turn over the estate of the minor to the guardian appointed by the court in El Paso county, Colorado, the power of the guardians, K. and C., terminated or was destroyed; that they were without capacity to take or prosecute this appeal. Held, the district court erred in dismissing said appeal. The judgment is reversed, and the cause remanded, with directions.

Error from District Court, Tulsa County; Owen Owen, Judge.

In the matter of the guardianship of the estate of Robert Pitman, Jr. From order of county court settling account of former guardian, D. A. McDougal, D. Kersey and another, guardians, appealed to the district court. Upon motion of McDougal the appeal was

dismissed, and Kersey brings error. Reversed and remanded.

Davidson & Williams, for plaintiff in error.

McDougal, Lytle, Allen & White, for defendant in error.

JOHNSON, J. This is an appeal from a judgment of the district court of Tulsa county, Oklahoma, rendered on the 21st day of May, 1919, dismissing the appeal of the plaintiff in error from a judgment of the county court of Tulsa county, Oklahoma, rendered on the 12th day of June, 1915, settling the account of the defendant in error, as former guardian of the estate of said minor.

Robert Pitman, Jr., is a minor Creek citizen of the half-blood, born on the 8th day of August, 1902, according to the enrollment record of the Dawes Commission to the Five Civilized Tribes. He is a son of Robert Pitman, Sr., a noncitizen, and Lucinda Pitman, a full-blood Creek citizen, enrolled as number 1833, and is on the new-born Creek roll as number 794.

On November 12, 1906, William H. Roeser, of Tulsa, Oklahoma, was appointed guardian of the person and estate of said minor by the United States district court for the Western district of Indian Territory, and as such guardian he leased the said minor's allotment for oil and gas purposes, under the authority and direction of the United States district court, by and with the approval of the Secretary of the Interior, the oil and gas leases being in departmental form. Immediately after statehood the guardianship cause was transferred from the United States district court to the county court of Tulsa county, Oklahoma, the guardian at that time, as well as at the time of his appointment, being a resident of Tulsa. On the 15th day of March, 1909, Roeser resigned, and on March 30, 1909, the county court of Tulsa county accepted his resignation and appointed Robert Pitman, Sr., the father of said minor, as guardian of his person and estate. About the first of May, 1909, Robert Pitman, Sr., moved from Sapulpa, Creek county, Oklahoma, where he and his family then resided, to Colorado Springs, in El Paso county, Colorado, and took with him his wife and family, including the said minor, and established a permanent domicile for himself and family at Colorado Springs. Robert Pitman, Jr., and his mother, Lucinda Pitman, were affected with tuberculosis, and the change of residence was made on that account upon the advice of physicians; Colorado Springs being a place of high altitude and noted as a tubercular resort.

After the change of residence to Colorado had been effected, Robert Pitman, Sr., applied to the county court of El Paso county, Colorado, for appointment as guardian of said minor's person and estate, and was by that court duly appointed as such, and qualified by taking the oath of office and executing bond; but thereafter, during the month of October, 1909, the surety on his bond in the state of Colorado had withdrawn from the bond and Pitman's letters of guardianship had been revoked. On about this date, W. P. Moore commenced proceedings in the county court of Tulsa county for the removal of Robert Pitman, Sr., as guardian of Robert Pitman, Jr., and pending the same, and on November 1, 1909, Robert Pitman resigned as guardian of said minor, and D. A. McDougal was appointed as guardian of the estate of said minor by the county court of Tulsa county, and on the 10th day of November, 1910, qualified as such and entered upon the discharge of his duties, and proceeded to loan out the funds of said estate to different parties, aggregating by the 1st of January, 1910, the sum of $33,000. On the 14th day of January, 1910, O. P. Grimes was appointed guardian of the person and estate of said minor by the county court of El Paso county, Colorado, upon a petition and request of the father and mother of said minor, and immediately qualified as such guardian. On the 28th day of January, 1910, Grimes as said guardian filed in the county court of Tulsa county, Oklahoma, an application praying that said court make an order authorizing and directing him to take and remove all of the personal estate of said minor from the jurisdiction of the county court of Tulsa county to the jurisdiction of the county court of El Paso county, Colorado. This application was resisted by McDougal, the Oklahoma guardian, and upon hearing said application, on the 17th day of February, 1910, the county court denied the application of Grimes, whereupon Grimes appealed to the district court of Tulsa county, and upon the hearing of said appeal in said court of Tulsa county, on the 8th day of March, 1913, his application was granted by order of said court.

The essential part of said order is as follows:

"It is therefore ordered, adjudged and decreed by the court that O. P. Grimes, as guardian of the person and estate of Robert Pitman, Jr., under appointment of the probate court of El Paso county, Colorado, be and he is hereby granted leave to take and remove the entire personal estate of the said minor from the state of Oklahoma to the state of Colorado, and he is hereby authorized to sue for and receive the same, in his own name, for the use and benefit of the said ward; and D. A. McDougal, as guardian of the estate of said Robert Pitman, Jr., under appointment of the county court of

Tulsa county, Oklahoma, be and he is hereby directed to forthwith surrender up, transfer and deliver to the said O. P. Grimes, as such guardian, all personal estate of the said ward and take his receipt therefor.

"And it is further adjudged that the clerk's, sheriff's and stenographer's costs in this proceeding be paid by D. A. McDougal out of the funds in his hands as guardian of the estate of said Robert Pitman, Jr."

From this order of the district court, McDougal, as such guardian, perfected an appeal to the Supreme Court in the month of September, 1913. Pending such appeal, Robert Pitman, Jr., as father and next friend of said minor, and M. L. Mott, as national attorney for the Creek Nation of Indians, filed in the county court of Tulsa county, in said guardianship proceedings, a petition praying for the removal of McDougal as such guardian, charging that he had mismanaged and wasted the estate of the said minor. On the 14th day of November, 1913, upon hearing had, the county court of Tulsa county granted said petition and made an order removing McDougal as such guardian and appointed in his stead, as joint guardians of said estate, E. Kersey and Edward Crossland, who qualified as such on the 17th day of November, 1913, and immediately entered upon the discharge of their duties as such.

In the order removing McDougal, the court ordered him to file his final account within 30 days thereafter, which he failed to do, but, instead, gave notice of appeal to the district court of Tulsa county from an order of the county court previously made, denying the transfer of the cause to Creek county, and also filed his suit in the district court of Tulsa county in which he asked for a writ of prohibition against the Hon. Con Linn as county judge of Tulsa county, and the newly appointed guardians as his successors, and praying for an injunction against the newly appointed guardians, enjoining them from assuming to act for the estate of said minor. Said district court, on the 20th day of December, 1913, sustained a demurrer to this petition; thereupon the said McDougal dismissed said suit. In the meantime McDougal filed in the district court his appeal from an order of the county court denying his application for the transfer of the guardianship cause to Creek county, and the order removing him as guardian and appointing Kersey and Crossland as his successors. Upon a motion of the latter, the district court dismissed said appeal on the 13th day of December, 1913.

On the 20th day of December, 1913, Kersey and Crossland, as guardians of the estate of said minor, filed in said guardianship cause an application for a citation against said McDougal to show cause why he had failed to file his final account as ordered by the county court when he was removed. Citation was issued, requiring him to appear and show cause why he had not filed his account as ordered, but before the hearing of said citation McDougal paid over to Kersey and Crossland, as said guardians, the sum of $16,630.45 in cash, and delivered to them certain notes and mortgages belonging to said estate, and announced that he was ready and willing to file his final account. Thereafter, on the 15th day of January, 1914, McDougal did file in said cause an account denominated his final account. On the 14th day of April, 1914, Kersey and Crossland, as joint guardians of the estate of said minor, filed written exceptions to the purported final account of McDougal, under which they undertook to surcharge McDougal with various items aggregating a large sum. The final account of McDougal and the exceptions to his account were heard in the county court of Tulsa county, and an order made thereon settling said account on the 12th day of June, 1915. From this order, Kersey and Crossland, as joint guardians, applied to the district court of Tulsa county as to both law and facts, and lodged the same in said court on the 17th day of December, 1915.

About the first of February, 1914, the appeal in the Supreme Court before mentioned was dismissed upon a stipulation between Grimes as nonresident guardian and Kersey and Crossland as resident guardians, and thereafter on the 20th day of February, 1914, the resident guardians paid over to the nonresident guardian a sum in cash, and delivered to him certain notes and mortgages belonging to said minor's estate, and took his receipt therefor, but there remained in the custody and control of the resident guardians the real property belonging to said minor, consisting of his allotment and certain houses and lots situated in the cities of Sapulpa and Tulsa. The minor's allotment had previously been developed for oil and gas under the oil and gas leases heretofore mentioned, and was producing oil in large quantities, and has so continued to produce oil.

The Department of the Interior had, prior to the 20th day of February, 1914, released supervision over the allotment of said minor and the oil and gas operations thereon, save and except as to the homestead allotment, and about 32 acres of the surplus allotment which was included in one departmental lease to the Pulaski Oil Company. This lease is still under supervision of the department, and the royalties therefrom had at all times been run to the credit of the minor at the office of the superintendent of the Five Civilized Tribes at Muskogee, and the accumu-

lations therefrom are being held in said department to the credit of said minor.

On the 20th day of February, 1914, the day upon which the resident guardians turned over to the nonresident guardian the personal property before mentioned, there were three unsatisfied judgments in the district court of Tulsa county, procured by McDougal as guardian of said minor, one for $3,339.36 against L. C. Booth, one against the Dewey Park Realty Company for the sum of $32,-456.60, one against J. E. Rice et al. for $7,486.98, which was a large part of the large judgment mentioned, supra, also a judgment in the district court of Creek county against John T. Baldwin and Stella Baldwin for $1,813, and foreclosing the lien upon property in the city of Sapulpa which was bought in at sheriff's sale by Kersey and Crossland, as resident guardians, for the sum of $500.

On the 18th day of May, 1914, Kersey and Crossland, as joint guardians of the estate of said minor, filed their first intermediate account, which showed that they had on hand personal property belonging to said minor's estate in the sum of $3,615.47 in cash, which amount was approved by the county court of Tulsa county, on which date the receipt of Grimes, as nonresident guardian for the personal property transferred to him by the resident guardian, was exhibited to the county court of Tulsa county and deposited therein. On said date the exhibits of their account disclosed that they had in their possession the real estate hereinbefore referred to and the judgments of the property bought at sheriff's sales thereunder.

On the 15th day of June, 1915, Edward Crossland, one of the resident guardians, resigned, and his resignation was accepted by the county court, and E. Kersey continued as sole guardian of said estate by order of said court, and since that date said estate had been under the sole management and control of said E. Kersey.

The judgment of the county court settling the account of McDougal as former guardian, from which the appeal was taken to the district court, was rendered on June 12, 1915, and Crossland resigned on the 15th day of June, 1915.

On the 23rd day of January, 1918, McDougal filed in the district court in this cause a motion to dismiss the appeal on the ground that upon the personal property being transferred by him pursuant to the decree of the district court rendered on the 8th day of March, 1913, authorizing and directing such transfer and authorizing the foreign guardian to sue for and receive the personal estate of said minor in the state of Oklahoma, the authority of the local guardian ceased and terminated and their right to represent the said minor or his estate in the state of Oklahoma or elsewhere ceased. This motion was heard on the 28th day of January, 1918, before the Hon. W. J. Campbell, special judge of said court, who overruled said motion, but upon the calling of said cause in the district court before the Hon. Owen Owen as judge, on the 20th day of May, 1918, the movant renewed his motion and the latter judge sustained the same, and the plaintiff in error's appeal from the county court was dismissed.

From that judgment of the district court this appeal has been perfected by the plaintiff in error, whose assignments of error are:

1. "The said district court erred in sustaining the motion of the said D. A. McDougal to dismiss the appeal of the said Kersey, as guardian of the estate of said minor, and in dismissing said appeal, to which ruling of the court the plaintiff in error at the time excepted."

2. "The said district court erred in refusing and ruling out competent and legal evidence offered in behalf of said Kersey, as guardian of the said minor, on the hearing of said motion of the defendant in error, D. A. McDougal, to which ruling of the court the plaintiff in error at the time excepted."

3. "The said district court erred in overruling the motion of said Kersey, as guardian of the estate of said minor, to set aside and vacate the judgment of said court sustaining the motion of said D. A. McDougal and dismissing the plaintiff in error's appeal, and refusing to grant the plaintiff in error a new trial of said motion, to which ruling of the court the plaintiff in error at the time excepted."

Counsel for plaintiff in error say in their brief:

"The assignments of error may best be considered together under two propositions:

"1. Did the entering of the order of transfer and filing of the foreign guardian's receipt with the county court terminate the guardianship in Oklahoma?

"2. Did the entering of the order of transfer and the filing of the foreign guardian's receipt with the county court deprive the resident guardians of all interest in the estate of the minor to the extent that they had no right or authority to contest the interest of the minor in the settlement of the account of McDougal, as former guardian?

"We earnestly contend that the entering of the order of transfer and filing of the foreign guardian's receipt with the county court did not terminate the guardianship in Oklahoma. The order of transfer was made under authority of sections 6574 and 6575 of the Re-

vised Laws of Oklahoma, 1910. They are as follows:

"6574. 'When the guardian and ward are both nonresidents, and the ward is entitled to property in this state which may be removed to another state, territory or foreign country without conflict with any restrictions or limitations thereupon, or impairing the right of the ward thereto, such property may be removed to the state, territory or foreign country of the residence of the ward, upon the application of the guardian to the judge of the county court of the county in which the estate of the ward, or the principal part thereof, is situated.'

"6575. 'The application must be made upon ten days' notice to the resident executor, administrator or guardian, if there be such, and upon such application the nonresident guardian must produce and file a certificate, under the hand of the clerk, judge, surrogate or other authorized officer, and the seal of the court from which his appointment was derived, showing:

"'First. A transcript of the record of his appointment.

"'Second. That he has entered upon the discharge of his duties.

"'Third. That he is entitled by the laws of the state, territory or country of his appointment, to the possession of the estate of the ward; or must produce and file a certificate under the hand and seal of the clerk, judge, surrogate, or other authorized officer of the court having jurisdiction in the country of his residence, of the estates of persons under guardianship or of the highest court in such state, territory or country, that by the laws of such country the applicant is entitled to the custody of the estate of his ward without the appointment of any court.

"'Upon such application, unless good cause to the contrary be shown, the judge of the county court must make an order granting to such guardian leave to take and remove the property of his ward to the state, territory or place of his residence, which is authority for him to sue for and receive the same in his own name for the use and benefit of his ward.'

"6576. 'Such order is a discharge of the executor, administrator, local guardian, or other person in whose possession the property may be at the time the order is made, on filing with the county court the receipt therefor of the foreign guardian of such absent ward.'

"The first question that presents itself is, What is the meaning of the word 'discharge' as used in section 6576 of the statute? Does it mean the termination of the representative capacity of the local guardian, or does it mean the release of the local guardian from all liability for the property paid or delivered to the foreign guardian? It is our contention

that it should be given the latter construction."

Counsel concede that the controversy involved in this appeal rests upon the construction to be placed upon these provisions of the statutes, concerning which counsel for defendant in error say in their brief:

"It will be noticed from this motion that the ground for dismissal was that the appeal was not prosecuted by any one having legal authority, or any one having any interest in the subject-matter of the controversy; that E. Kersey, in whose name and by whom the appeal was attempted to be prosecuted, had no interest in the controversy, and had no legal authority to represent the minor in prosecuting the appeal.

"It was the contention of the defendant in error, D. A. McDougal, and he so contends now, that when the estate of said Robt. Pitman, Jr., was removed from the state of Oklahoma to the state of Colorado, and all the removable property was taken from this state to the state of Colorado by O. P. Grimes, his guardian in Colorado, and said removal being made in conformity to statute of this state, that then all authority and duties of the local guardians ceased and terminated.

"The removal of the estate of the minor is controlled exclusively by the statute, and the determination of the question presented on appeal must depend upon the construction to be given this statute and the orders and judgments of the court in transferring this estate. Section 6574, set out on pages 29 and 31 of plaintiff in error's brief, provides that the property of the minor may be removed. Section 6575 provides the method of removal and section 6576 determines the effect of such removal. By diligent search we have been unable to find any decision construing this statute or any that would be of any aid to the court in determining the question presented.

"To sum it up, it is our contention that the removal of the estate from this state to the state of Colorado was a transfer of the control, management and guardianship of the whole estate. Notwithstanding the same real property might be owned by the minor in this state, and notwithstanding the fact that Kersey might be in this state, and notwithstanding the fact that Kersey might be intermeddling in the minor's estate and trying to act as guardian, that this transfer supersedes all authority to the local guardians, and deprives them of any duties in regard to this estate, and such duties were transferred to the foreign guardian.

"And, further, that the statute designates the foreign guardian as the one to maintain any action or proceeding relative to property of this minor which was ordered trans-

ferred, and this authority is exclusive, and any one attempting to act as local guardian has no such authority; that this appeal must be prosecuted by the foreign guardian, and that as no one was prosecuting this case on appeal in the district court, the district court properly entered its judgment and order dismissing the attempted appeal."

Counsel cite no authorities sustaining this contention and frankly say they have been unable to find any.

The trial court made no separate findings of fact. At the close of the hearing of the motion to dismiss, the trial court announced his conclusions in the following language:

"The court is of the opinion after making the order to turn over the estate of the minor to the guardian appointed by the court in El Paso county, Colorado, that under section 6575, Compiled Laws 1910, the power of the guardians, Crossland and Kersey, terminated or was destroyed, that they were without capacity to take or prosecute this appeal. The appeal is dismissed."

To which action of the court the plaintiff in error saved an exception. Thereafter the plaintiff in error's motion for new trial was overruled and the judgment of the trial court sustaining the motion to dismiss the appeal was rendered.

The order of the district court transferring the personal property of the minor to the nonresident guardian was made on the 8th day of March, 1913. The foreign guardian's receipt was dated February 20, 1914, and was filed by the plaintiff in error with the county court of Tulsa county on the 7th day of November, 1914.

Edward Crossland, one of the joint guardians, resigned on the 15th day of June, 1915, and the plaintiff in error was, by order of the county court of Tulsa county made on the said date, continued as sole guardian of the estate of said minor. The order of the county court of Tulsa county removing McDougal as guardian of said minor, was made on the 14th day of November, 1913, at which time the court appointed E. Kersey and Edward Crossland guardians for said minor, who qualified as such on the 17th day of November, 1913, and immediately entered upon the discharge of their duties as such. The order removing McDougal directed him to file his final account within 30 days thereafter. He filed such account on the 15th day of January, 1914, and on the 15th day of January, 1914, Kersey and Crossland, as joint guardians, filed written exceptions to the same.

It is conceded by counsel that, whatever the powers of the foreign guardian, they are fixed by the provisions of the statute, supra.

In 12 R. C. L. 1174, it is said:

"Guardianship depends for its validity and legal effect on the law of the jurisdiction by which it was created, and the guardian's authority does not extend beyond the limits of the state. A guardian appointed in a foreign country, or in another state in the Union, cannot demand control of the ward's person, maintain a suit as guardian, sell or lease the ward's property, collect the debts due to him, or demand his distributive share of an estate. But this strict rule of law is much modified in its practical operation by the exercise of the comity which exists between civilized states, particularly between the several states of the American Union, and their courts. * * * In some of the states the statutes provide for the filing by a foreign guardian of a copy of his appointment, and thereupon giving him the right to exercise certain powers within the state. In many cases where the removal of the ward to another state, or other circumstances, make the foreign jurisdiction more convenient for the administration of the trust, the court has ordered funds to be transmitted to the foreign guardian. Such order of transmission is the regular practice when the domestic guardianship is merely ancillary, and the principal guardianship is at the domicile of the ward in another state. And where the ward had a guardian of the person in the state of his domicile, and also a guardian in a state in which he had property, the domiciliary guardian has been granted an order requiring the other guardian to pay the expenses of the ward's support and education."

Our statute comes from Dakota, which, in turn, took it from California. In California, in the case of McNeil v. First Congregational Society of San Francisco, 4 Pac. 1096, the Supreme Court of that state held in 1884 that a foreign guardian had no authority to sell lands belonging to his ward situated in that state. The court said:

"As to the second source from which defendants claim title, the deed executed by the mother of Frances W. Paty under the acts of the Legislature was void, because, although she had been appointed guardian of the person of the minor by the probate court of the state of Massachusetts and by the Supreme Court of the Hawaiian Islands, she had never been appointed guardian of his person and estate by the probate court of this state."

And in the case of Wilson v. Hastings, 5 Pac. 217, decided in 1884, the Supreme Court of California said:

"The paper admitted in evidence, by which Samuel Woods, as guardian of the minor devisees, appointed and resident in Mississippi, assumed to consent to the probate sale on behalf of his wife and the minor children, devisees, was of no value in this case; at least, so far as the minors were concerned.

If he was their guardian, he was such in Mississippi, his and their place of residence—not here; and such guardianship would give him no authority to bind their real estate here."

Sections 3339, 3340, and 3341, Rev. Laws 1910, provide:

3339. "The power of a guardian appointed by court is suspended only:

"First. By order of the court.

"Second. If the appointment was made solely because of the ward's minority, by his obtaining majority.

"Third. The guardianship over the person only of the ward, by the marriage of the ward."

3340. "After a ward has come to his majority, he may settle accounts with his guardian and give him a release, which is valid if obtained fairly and without undue influence."

3341. "A guardian appointed by a court is not entitled to his discharge until one year after his ward's majority."

This court has uniformly held that a succeeding guardian may contest settlement of a former guardian's account and prosecute an appeal from the judgment of the court settling the account.

We think it is clear that the order of the court transferring the personal property of the minor to the foreign guardian and the filing with the county court of the receipt therefor of the foreign guardian of the absent ward did not suspend the power of the local guardian over the residue of the property of the estate of the minor remaining in Oklahoma in any particular, but that such local guardian remained clothed with all power in relation thereto imposed by the laws of the state upon guardians generally, including that of instituting suits and proceedings for the protection of the property of his ward in this state, and to prosecute the same to a final determination. Sections 3339, 3340, and 3341, supra; Brewer v. Perryman et al., 62 Okla. 176, 162 Pac. 791; In re Cobb's Estate, 66 Oklahoma, 166 Pac. 885; Anderson v. Anderson, 67 Oklahoma, 165 Pac. 145; Stewart v. Sims, 112 Tenn. 296, 79 S. W. 385; Hill v. Reed, 23 Okla. 616, 103 Pac. 855.

From an examination of the record we are of the opinion that the trial court erred in rendering the judgment complained of, and the same is reversed and the cause remanded, with directions to proceed further in accordance with the views herein expressed.

RAINEY, C. J., and HARRISON, KANE, PITCHFORD, and McNEILL, JJ., concur.