**MASON v. FORD.**

No. 11960—Opinion Filed Feb. 13, 1923.

Rehearing Denied March 20, 1923.

Second Rehearing Denied June 26, 1923.

(Syllabus.)

1. **Guardian and Ward—Proceeding by Foreign Guardian to Remove Property From State—Burden of Proof.**

In a proceeding by a foreign guardian, where the foreign guardian and ward are both nonresidents, seeking to remove personal property within the state to the residence of the ward as provided in sections 6574 and 6575, Rev. Laws 1910, and the foreign guardian makes the necessary proof required in section 6575, Rev. Laws 1910, the county court must make an order granting the guardian leave to take and remove the property of his ward to the state of his residence, "unless good cause to the contrary be shown." Held, the burden of proof is upon party seeking to establish a good cause to the contrary.

## 2. Same—Jurisdiction—Comity.

In such a proceeding the question of whether good cause to the contrary be shown, involves the doctrine of national comity, growing out of a conflict of independent jurisdictions, and must be determined upon the principle of comity, equity, and justice.

## 3. Same—Grounds for Refusal of Removal.

If it appears from the facts in the case that some principle of public policy would be violated, or that the legal rights of any of our citizens would be injured or impaired by the transfer of the funds to the foreign guardian, the order removing the property should be denied.

## 4. Same—Higher Taxes in Foreign Community.

In such a proceeding the question of whether the taxes in the jurisdiction where the ward resides would be somewhat greater than in this jurisdiction, is not a fact to be considered, because the ward is a resident of the foreign community and looks to that community for his protection and education, and the principles of justice and equity would not be subserved by assisting in having his property escape taxation in that community.

## 5. Same—Denial of Removal—Failure of Evidence.

Record examined, and held, there was no evidence or no facts introduced in evidence, when the proper principles of law were applied, to justify denying the application to remove said property.

Error from District Court, Muskogee County; E. A. Summers, Judge.

Petition by Isaac S. Mason, as foreign guardian of person and estate of Isaac Mason, Jr., against P. M. Ford, resident guardian of estate of Isaac Mason, Jr., for removal of personal property to District of Columbia. Petition denied, and petitioner brings error. Reversed and remanded, with directions.

Rainey & Flynn, Neff & Neff, and Chas. H. Merrilat, for plaintiff in error.

S. M. Rutherford and James W. Cosgrove, for defendant in error.

McNEILL, J. The material facts in this case may be stated about as follows: Isaac Mason, Sr. (a negro), is a resident of the District of Columbia and employed as a clerk in the Treasury Department. He is the father of Isaac Mason, Jr., a boy about seven years of age, and was regularly appointed guardian of the person and estate of said minor in the District of Columbia. The minor inherited valuable property from his deceased mother, which is located in Muskogee county. P. M. Ford was appointed by the county court of Muskogee county as the guardian of the estate of said minor. The estate in this state consists of real estate in Muskogee and a farm which produces oil, certain money, bonds and notes secured by real estate mortgages. The money, mortgages, and bonds amounted to approximately $45,000. Isaac Mason, Sr., as foreign guardian, filed in the guardianship proceedings in Muskogee county an application, as provided in sections 6574 and 6575, Rev. Laws 1910, for an order directing the local guardian, P. M. Ford, to turn over and deliver to the petitioner the personal property in his possession in order that the same might be removed to the District of Columbia, the residence of the ward.

To this petition the guardian, P. M. Ford, filed an answer, alleging: (1) That the petition for removal was insufficient and not in compliance with the statute of Oklahoma. (2) That it was for the best interest of the minor and the estate to allow said property to remain in the hands of the guardian at Muskogee. (3) That it would be prejudicial to the best interest of the minor to permit said property to be removed to the District of Columbia. (4) That the petitioner is estopped from seeking the removal of said property for the reason that Isaac Mason, Sr., was a party to the proceeding, for the reason when P. M. Ford was appointed guardian, Isaac Mason acknowledged the residence of the ward to be in Muskogee county, and the order appointing the guardian recited that it was agreed the estate should be administered in Muskogee county and that Isaac Mason, Sr., waived any right to be appointed guardian for a period of five years.

The application came on for hearing before the county court, and the judge denied the application. An appeal was prosecuted to the district court. Upon a hearing in the district court the district judge denied the application. It is from the order of the district court denying said application, the said Isaac Mason, Sr., the foreign guardian of the person and estate of Isaac Mason, Jr., has appealed to this court.

The appeal involves but one question, to-wit: Whether the court erred in denying the petition for removal of the property; or it may be stated, Should the personal property in the hands of the guardian appointed in this state be ordered transferred to the guardian in the District of Columbia, where the guardian and ward both reside?

The proceeding where the guardian and ward are both nonresidents to remove property, such as is involved in the case at bar, is controlled by sections 6574 and 6575. Rev. Laws 1910. Section 6574 provides, in substance, when the guardian and ward are both nonresidents and the ward is entitled to property in this state, which may be removed to another state, such property may be removed upon application of the guardian to the judge of the county court in which the estate of the ward of the principal part thereof is situated. Section 6575, Rev. Laws 1910, provides what the application must contain and for the giving of notice, and provides as follows:

" * * * Upon such application, unless good cause to the contrary be shown, the judge of the county court must make an order granting to such guardian leave to take and remove the property of his ward to the state, territory, or place of his residence," etc.

These sections of the statute, in plain and unambiguous language, provide when the guardian and ward are both nonresidents, and the foreign guardian presents an application to the county judge, with the necessary proof of his appointment and bond, the court must make an order granting such application, "unless good cause to the contrary be shown." When the foreign guardian has produced the proper papers and certificates, it is incumbent upon the guardian in this state, or some other proper person, to show good cause why the property should not be removed.

The above sections of the statute are identical with the statutes of Dakota and similar to the one in California, but the same never appears to have been construed by the courts of either of those states, and only indirectly by this court in the case of Kersey, Guardian, v. McDougal, 79 Okla. 53, 191 Pac. 594. There is no contention made in the briefs that the foreign guardian did not produce and file the proper transcript and papers, required by section 6575, Rev. Laws 1910, to entitle him to have the property removed. The plaintiff in error contends there was no evidence to support a finding or judgment that any good cause or reason existed to deny the application.

It is necessary to determine what facts or circumstances are to be taken into consideration in determining whether a "good cause" exists to deny such an application. The courts of the different states that have dealt with this kind and character of cases, under statutes different from ours, and some of the courts, where the statute contained no provisions for removal, have announced the general principle that the courts in determining this question should be guided by what would be for the best interest of the ward based upon a sound principle of national comity, equity, and justice, growing out of a conflict of independent jurisdiction, between the courts of the different states and the rights of a citizen of a foreign state, who owns personal property in the state where the proceedings are pending.

In Indiana there is no statute that authorizes the removal of property to the residence of the ward, but the principles that were involved were discussed in the case of Earl v. Dresser, 30 Ind. 11, 95 Am. Dec. 660, and the court stated as follows:

"The question whether or not such an order should be made is addressed to the sound discretion of the court, to be determined upon principles of comity, equity, and justice; and where it appears for the best interest of the ward, and that no principle of public policy will be violated, or the rights of any of our citizens be injured or impaired, the court should make the order."

In the body of the opinion, the court stated as follows:

"The question here is one involving the doctrine of national comity, growing out of the conflict of independent jurisdictions. It is a question addressed to the sound judicial discretion of the court, to be determined upon principles of comity, equity, and justice. If it appeared, from the facts of the case, that any principle of public policy would be violated, or that the legal rights of any of our own citizens would be injured or impaired by the transmission of the fund to the foreign guardian, it would undoubtedly be right to retain it here. But it does not appear that any such consequences would result from its transmission. Dresser, the foreign guardian, is the father of the ward. The domicile of the father is the legal domicile of the ward, his infant child; and they are both domiciled in the state of Michigan.

"The father is the natural guardian, and, independent of his letters of guardianship, —if not morally or otherwise incapacitated— has the right to the custody, care, and education of his infant child, and would be quite as likely to consult its interests in the disposition or investment of the fund as a stranger or one more remotely related. Dresser was appointed guardian of the per-

son and estate of the ward by the proper probate court of the county of his domicile, in Michigan, and gave bond, as appears, with special reference to this fund. The bond was approved by the court where it was given, its penalty is ample, and we must presume that the court here, in granting the order, was satisfied of the sufficiency of the sureties.

"Under such circumstances, it seems evident that the best interests of the ward, as well as the principles of justice and fair comity, demand that the fund should be paid over to the foreign guardian. The power of the courts of this state to make such orders is clearly recognized in Warren v. Hofer, 13 Ind. 167."

Let us now consider what defendant in error contends are the reasons why the court should refuse to order said property removed. The first reason assigned is stated as follows.

"The rate of taxation on real estate notes in the District of Columbia is fifteen times greater than it is in Oklahoma."

No case is cited to support the contention that this would be a valid reason. Plaintiff in error states, admitting this fact to be true, the difference in the taxation would only amount to $72.10 a year. Would this be a valid reason, based upon the principles of comity, equity, and justice, to deny the removal of personal property? The father and ward both live in the District of Columbia. They both receive the benefit and protection of the laws of that community. They will look to that community to provide and maintain schools in order that the ward may receive an education. Should the courts of this state withhold the property of the ward and prevent it from being moved to that community for the purpose of saving a few dollars taxes, and then expect the people of that community to bear a greater burden of the taxes, necessary to protect this ward, and educate him? This would be violating every principle of comity, equity, and justice.

It is further contended that the order transferring the personal estate to the Washington guardian will necessitate extra court costs, guardian's compensation, and attorney fees without any corresponding benefit to the estate. It is sufficient to say there is no evidence in the record of what such costs would be, and we are not inclined to believe the courts of the District of Columbia will fail to protect its citizens with the same zeal and zealousy as the Oklahoma courts will attempt to protect its wards and citizens.

It is further suggested that the producing end of the ward's income is in Oklahoma and the estate is increasing and it is necessary to have a local guardian. That may be true, but the statute contemplates that property that can be removed may be removed, and the local guardian will continue to look after the estate that cannot be removed. The parties both discuss the question of whether the statute vests the district court with discretion in ordering said property removed. While no doubt there is a discretion vested in the court, the courts of the different states have not directly passed upon this question under a statute which is as broad as the Oklahoma statute relating to this question. We think the rule applicable to the discretion vested in the courts is stated by Mr. Justice Sharp in the opinion in the case of Vickers v. Philip Carey Co., 49 Okla. 231, 151 Pac. 1023. In the body of the opinion he stated:

"The 'discretion' spoken of in the authorities is a legal discretion; a discretion to be exercised in discerning the course prescribed by the law, according to principles ascertained by adjudged cases. * * * Courts are the mere instruments of the law, and can will nothing. Judicial power is not exercised for the purpose of giving effect to the will of the judge, but always for the purpose of giving effect to the will of the law. * * * Where the court grants a new trial, but in doing so disregards the rules of law controlling the exercise of the power, its action presents a question of law reviewable on appeal."

If we concede the court has discretionary power, still that discretion must be exercised in carrying out the will of the law, which is to enforce principles of comity, equity, and justice in authorizing and permitting the removal of the personal property of the ward from this state to the home of his residence.

There is a further contention regarding the qualification of the foreign guardian. The record disclosed that while he is a negro and holds a clerkship in the Department of the Treasury, he has executed a bond with a surety company in the sum of $90,000. He has been and is intrusted with the care, custody, and education of his minor son. His qualification to do that has never been questioned, and under these facts we think there is no reason to question his ability to take care of and protect the estate of his ward under the guidance of the courts where he resides. The evidence, in our judgment, fails to disclose any good cause or reason why the property should not be removed, and the trial court erred in refusing the application.

For the reasons stated, the judgment of the district court is reversed and remanded, with directions to the district court to enter

an order directing the county court to enter an order directing the guardian of the estate to transfer to the foreign guardian the personal property, following out the provisions of the statute relating to that procedure.

JOHNSON, V. C. J., and KANE, KENNAMER, NICHOLSON, COCHRAN, and BRANSON, JJ., concur.