## BOARD OF COM'RS OF PONTOTOC COUNTY v. BRASHEARS et al.

No. 11542—Opinion Filed May 15, 1923.

### 1. Indians — Removal of Restrictions on Land—Death of Allottee.

The act of Congress of May 27, 1908, provides: The death of any allottee of the Five Civilized Tribes operates to remove all restrictions upon the alienation of said allottee's land, with the limitation that no conveyance of any full-blood Indian heir in said land shall be valid unless approved by

the court having jurisdiction of the settlement of the estate of said deceased allottee. Held, that the death of the allottee in this case operated to remove all restrictions upon the alienation of said allottee's land.

**2. Taxation—Property Subject—Indian Inherited Land.**

Under acts of Congress of April 26, 1906, and May 27, 1908, relating to restriction on alienation of lands allotted to Indians and declaring that death of any allottee removes restrictions, held that on the death of an Indian allottee and descent of lands to heirs of less than full Indian blood the lands became subject to taxation prior to their sale through the Oklahoma probate court; the provisions as to minority not changing the matter.

(Syllabus by Thompson, C.)

Commissioners' Opinion, Division No. 5.

Error from District Court, Pontotoc County; J. W. Bolen, Judge.

Action by G. W. Brashears in behalf of himself and Ivey Brashears against the Board of County Commissioners of Pontotoc County. Judgment for plaintiffs, and defendant brings error. Reversed and remanded.

J. W. Dean, County Attorney, for plaintiff in error.

A. C. Chaney, for defendants in error.

Opinion by THOMPSON, C. Defendants in error, plaintiffs below, commenced this action before the board of county commissioners on the 29th day of September, 1919, by filing, through their attorney, an affidavit of erroneous assessment, setting forth in said affidavit that the north half of the north half of the southeast half and the southwest quarter of the northeast quarter and the southeast quarter of the northeast quarter of the northeast quarter, of section 17, township 2, north, range 4 east, containing 90 acres, had been erroneously placed on the ferret tax rolls for taxes for the years 1908, 1909, 1910, 1911, 1912, 1913 and 1914, for certain amounts of taxes for each of said years amounting to the total sum of $221.52 and the penalties thereto attached and on the regular rolls for other years up to and including 1919, and alleged that the assessments were erroneous for the reason that the same was inherited Indian land, the title of which was vested in an Indian minor and claiming the same was exempt from taxation because the same was restricted during the minority of the Indian heir; and prayed the board of county commissioners to cancel the same and remove the cloud from the title to the above described lands;

and that the records be made to show that no taxes were due on said lands for the years 1908 to 1919, inclusive. That the affidavit and petition for erroneous assessment came on for hearing before the board of county commissioners, and after due consideration was disallowed by the board of county commissioners, and defendant in error appealed from said decision of said board of county commissioners to the district court, in and for Pontotoc county, state of Oklahoma, on the ground that the decision of said board of county commissioners was contrary to both the law and facts; and said appeal was perfected and filed in the district court by proper transcript, on the 12th day of November, 1919, and on the 14th day of November, 1919, there was filed in said cause an agreed statement of facts, signed by A. C. Chaney, attorney for G. W. Brashears, defendant in error, and Wayne Wadlington, county attorney in and for Pontotoc county, state of Oklahoma, for plaintiff in error, which agreed statement of facts is in words and figures as follows, to wit:

"Agreed Statement of Facts.

"It is agreed and stipulated by and between A. C. Chaney, attorney of the petitioner herein, and Wayne Wadlington, county attorney of Pontotoc county, state of Oklahoma, that the following statement of facts shall constitute the facts in the above cause, and each agree to rest their case upon the same and introduce no further testimony:

"First: It is agreed that Lydia Brashears was the wife of G. W. Brashears, and was an intermarried citizen, and that the said Lydia Brashears deceased in 1904, and an administration was had upon her estate, in which G. W. Brashears was declared to hold a courtesy or dower right under the Arkansas law then in force in this jurisdiction and that Ivey Brashears was declared to be the heir of the said Lydia Brashears and inherited the following described land in Pontotoc county, state of Oklahoma, to wit: N. ½, N. ½, S. E. and S. W. ¼ of N. E. ¼ and S. E. ¼ of N. W. ¼ of N. E. ¼ of section 17, township 2 N. range 4 east.

"Second: That the lands above described were placed by a tax ferret upon the tax ferret rolls for the years of 1908, 1909, 1910, 1911, 1912, 1913, 1914, and that during 1915, 1916, 1917, 1918, and 1919 said lands were placed on the county treasurer's regular tax rolls, but that there have never been any taxes collected on said lands nor have they ever been sold for taxes, but that the same have accumulated and now show as a lien or cloud upon the title to said lands.

"Third: It is further agreed that Ivey Brashears is a one-half blood Indian, and

is thus under restrictions on account of the federal laws in force at this time and during the past in this jurisdiction and that she has been a minor during the entire time from the date of her birth until the year of 1919, and since the first day of January, 1919, having reached her majority.

"Fourth.: It is further agreed that Ivey Brashears is the child of Lydia Brashears and G. W. Brashears, and that upon her reaching her majority the said G. W. Brashears has relinquished his dower of curtesy right in said lands to the said Ivey Brashears.

"Fifth: It is further agreed that Ivey Brashears has never had her restrictions removed by the Secretary of Interior on this or any other lands, and that no general order removing restrictions upon her or her lands has never been made.

"A. O. Chaney,<br>
"Attorney of Petitioner.<br>
"Wayne Wadlington,<br>
"County Attorney of Pontotoc<br>
"County, Oklahoma."

That upon the filing of said agreed statement of facts the cause was heard by the court by agreement of counsel and judgment rendered in favor of defendants in error, reversing the decision of the board of county commissioners, in which the court decided that Ivey Brashears was a restricted minor; that the lands described in the affidavit were nontaxable; ordered the same struck from the rolls during the years from 1908 to 1918, inclusive, and the cloud removed from the title and that the said lands be not held for taxes during the above named years; that motion for new trial was duly filed by plaintiff in error, which was overruled by the court and exception allowed. On the 24th day of November, 1919, the court, upon application of defendants in error, issued a restraining order, restraining the board of county commissioners from selling the lands to satisfy the taxes.

The questions presented for our consideration are: First. Is inherited Indian land in the hands of a minor Indian, of less than full-blood, subject to taxation? Second. Did the trial court commit error in holding that said lands were not subject to taxation by the county and state officials, under the agreed statement of facts in this case?

It is insisted by plaintiff in error that this land is subject to taxation, being inherited by Ivey Brashears, notwithstanding that she is a minor and of one-half degree of Indian blood and less than full-blood.

It is contended by defendants in error that the lands are not taxable by the state or county officials of Oklahoma for the reason that Ivey Brashers, who inherited the land from her mother, was an Indian minor and subject to certain restrictions under the laws of the United States, and that by virtue of the agreed statement of facts that her restrictions had never been removed by the Secretary of Interior on this, or any other lands, and that no general orders removing restrictions upon her, or her lands, had ever been made and that said lands are exempt from taxation, and plaintiff in error cannot raise the question that said lands were unrestricted, in so far as it relates to the same being subject to taxation.

While it is true that the trial court was confined solely to the agreed statement of facts, presented to it by the parties, and could not go outside of the agreed statement of facts as this was the sole evidence, it being agreed that the parties should rest upon the same and introduce no further testimony, yet we feel that the issue of law raised upon these facts was clearly before the court to determine whether this land, being inherited Indian land in the hands of a minor Indian of less than full-blood, was subject to taxation and that this question is clearly before this court to be determined by this court as to whether such land was subject to taxation, and whether it was restricted land and exempt from taxation under the federal laws, notwithstanding the fact that in the agreed statement of facts that it was. agreed:

"That Ivey Brashears is a one-half blood Indian and thus under restrictions on account of the federal laws in force at this time and during the past in this jurisdiction."

And that it was further agreed:

"That Ivey Brashears had never had her restrictions removed by the Secretary of Interior on this, or any other lands, and that no general orders removing restrictions upon her, or her lands, have ever been made."

It is our opinion that it is not and was not necessary for the Secretary of the Interior to remove the restrictions upon this land, as the land was inherited by the Indian minor, of one-half degree of Indian blood, from a deceased parent and that restrictions were removed by operation of the act of Congress of May 27, 1908 (35 Stat. 312, ch. 199), section 9 thereof, which is as follows:

"That the death of any allottee of the Five Civilized Tribes shall operate to remove all restrictions upon the alienation of said allottee's land: Provided, That no conveyance of any interest of any full-blood Indian heir in such land shall be valid unless approved by the court having jurisdic-

tion of the settlement of the estate of said deceased allottee."

Thus, from the foregoing provision of said act, it clearly appears that so far as the land in this case is concerned the restriction upon the same was removed by operation of law upon the death of the deceased parent. The said Ivey Brashears may, or may not, be under restrictions on account of the federal laws in force as to her own individual allotment, but it is very clear that she is under no restrictions as to this allotment other than any other minor of any other race in the state of Oklahoma, under the laws in force in this jurisdiction.

The next question to be determined is whether, under the agreed statement of facts and under the existing laws in force in this jurisdiction, such inherited land is subject to taxation by the state and county officials of the state of Oklahoma. The act of Congress of April 26, 1906 (34 Stat. 144), section 19, provides:

"That all lands upon which restrictions are removed shall be subject to taxation, and the other lands shall be exempt from taxation as long as the title remains in the original allottee."

And in the act of Congress of May 27, 1908, heretofore referred to, in section 4, it is provided:

"That all lands from which restrictions have been or shall be removed shall be subject to taxation, and all other civil burdens as though it were the property of other persons than allottees of the Five Civilized Tribes."

The act of Congress of April 26, 1906, heretofore referred to, under section 22, provides that adult heirs of a deceased Indian of either of the Five Civilized Tribes may convey the lands inherited from such decedent, and as to minors it uses the following language:

"And if there be both adult and minor heirs of such decedent, then such minors may join in a sale of such lands by a guardian duly appointed by the proper United States Court for the Indian Territory. And in case of the organization of a state or territory, then by a proper court of the county in which said minor or minors may reside or in which said real estate is situated, upon an order of such court made upon petition filed by guardian. All conveyances made under this provision by heirs who are full-blood Indians are to be subject to the approval of the Secretary of the Interior, under such rules and regulations as he may prescribe."

Thus, it will be seen that under both acts above referred to, restrictions were removed by both acts of Congress on all inherited lands, except of full-blood Indian heirs, and the power of the Secretary of the Interior was limited to supervision only over conveyances made by full-blood Indian heirs, by act of April 26, 1906.

In the case of United States v. Shock, County Treasurer, 187 Fed. 870, decided by District Judge Campbell, in the Circuit Court of the Eastern District of Oklahoma, we find this language, construing section 22, above quoted:

"Full-blood heirs were permitted to sell with the approval of the Secretary of the Interior. This amounted to a removal of restrictions from land inherited by adult and minor heirs, less than full-blood, and such lands thereby became taxable without regard to the degree of blood of the Indian ancestor."

The Circuit Court of Appeals of the United States, of the 8th Circuit, in the case of McNee v. Whitehead, 253 Fed. 546, 165 C. C. A. 216, holds:

"The Atoka Agreement (section 29 of the Curtis Act, Act June 28, 1898, c. 517, 30 Stat. 495) provides that the allotted lands 'shall be nontaxable while the title remains in the original allottee,' but manifestly this does not apply when the title has passed to his heirs by inheritance. To hold otherwise would require the judicial interpolation of the words 'or his heirs' after the word 'allottee,' and we are not authorized to make it."

And in the same decision, supra, we find the question of restriction and exemption from taxes with reference to minor heirs disposed of in the following language:

"As regards restrictions upon the alienation of allotted lands and their exemption from taxation, it was the practice of Congress, recognized by repeated decisions of the courts, to make a clear distinction between those lands still held by the original allottees and those acquired from them by inheritance, and that distinction should be borne in mind in the present case. It is conceded here that if sections 1, 4, and 9 stood alone, the lands in question would be taxable; but, it is argued that the definite prescription of ages of minority and the subjection of the lands of minors so defined to the orders of the local probate courts amount to the imposition of another restriction upon alienation, with its accompanying exemption from taxation, notwithstanding the removal of 'all restrictions' in sections 1 and 9. We do not think the argument is sound. Where Congress so unmistakably manifested an inten-

tion to remove all restrictions, it would take language more clear than that before us to indicate that it imposed another at the same time. In one sense the definition of minority and the commission of jurisdiction to the probate courts of the state constitute a limitation or restriction, but the purpose was to avoid the rules, sometimes loosely applied, of estoppel, waiver, and ratification in respect of the acts of minors and to prevent premature majority by decree of a court or by marriage as provided by state statutes. This was but a recognition and strengthening of the ordinary disabilities of minority in behalf of those of Indian blood, not an exception to the removal of restrictions upon alienation generally."

The Supreme Court of the state of Oklahoma, in the case of Board of County Commissioners of Grady County et al. v. Lenochan et al., 80 Okla. 169, 195 Pac. 116, held:

"The Atoka Agreement providing that allotted lands shall be nontaxable while title remains in the original allottee did not continue the exemption from taxation which a Chickasaw Indian of the half blood enjoyed to his heirs of less than half blood."

And it further held in the same case:

"On the death of a half-blood allottee and descent of lands to heirs of less than half Indian blood, the lands became subject to taxation prior to their sale through the Oklahoma probate court; the provision as to minority not changing the matter."

Then, from the above quoted statutes and decisions, we are of the opinion that after the death of Lydia Brashears, wife of G. W. Brashears and mother of Ivey Brashears, and approval of the act of Congress of April 26, 1906, the restrictions were removed by operation of law; that the lands being unrestricted land became subject to taxation by the state and county officials of the state of Oklahoma, under the act of Congress of April 26, 1906, and the act of Congress of May 27, 1908, and that under the statement of facts that the heir, Ivey Brashears, who inherited the land, was a minor Indian of one-half degree of Indian blood and less than full-blood, that the question of her minority does not, in any way, affect or change the law in that respect; that the trial court erred in finding that said lands were not subject to taxation and in granting a restraining order enjoining the county treasurer and county officials from proceeding to collect said taxes.

The judgment of the trial court is, therefore, reversed, and the cause remanded for further proceedings not inconsistent with the views herein expressed.

By the Court: It is so ordered.