HARDESTY et al. v. GORDON et al.

No. 28280.   Oct. 21, 1941.

Rehearing Denied Nov. 12, 1941.

Application for Leave to File Second Petition for Rehearing Denied Dec. 2, 1941.

*119 P. 2d 70.*

A. J. Kriete, Arch K. Kriete, and John R. Woodard, all of Tulsa, for plaintiffs in error.

Sands & Campbell, of Pawhuska, for defendant in error.

DAVISON, J. This is an action to recover possession of and quiet title to real estate situated in Tulsa county. It was instituted in the district court of that county by Gerald E. Hardesty and James W. Hardesty against Bessie Lee Gordon and her husband. A demurrer was sustained to plaintiffs' second amended petition for failure to state facts sufficient to constitute a cause of action. The plaintiffs elected to stand on their pleading, whereupon the trial court dismissed the action. Plaintiffs appeal. The order of appearance is thus preserved in this court, and the trial court designation will be used in this opinion.

The facts essential to a determination of this appeal, as reflected in plaintiffs' amended pleading, are as follows:

The plaintiffs are 1/32 blood Cherokee Indians. The real estate involved was inherited by them from their mother, Addie Hardesty, nee Eaton, who died February 22, 1918. She was an enrolled member of the Cherokee Tribe of 1/16 Indian blood. A part of the land was included in her allotment. The remainder had been purchased by her during her lifetime with funds derived from allotted lands.

The plaintiffs were born on April 4, 1915, and July 8, 1913, respectively. On November 10, 1933, the district court of Tulsa county entered its decree conferring rights of majority on them, which was subsequently corrected and amplified by an order nunc pro tunc. At that time the plaintiffs were both over 18 and under 21 years of age and both were under a guardian appointed by the county court of Tulsa county by reason of their minority.

In this connection (under a literal construction of plaintiffs' petition) it is somewhat doubtful that plaintiffs' pleading affirmatively and definitely reflects that the only grounds upon which they were placed under guardianship was minority; however, such is the implication and the briefs herein filed are based upon that hypothesis. We are therefore treating the point as conceded.

The rights of majority conferred or attempted to be conferred upon the plaintiffs by the district court specifically included the right to sell and convey real estate. In accord with the rights thus purported to have been vested, the plaintiffs executed warranty deeds to the land here involved under which the defendant Bessie Lee Gordon claims title and right of possession of the land in question.

The plaintiffs assert the invalidity of the deeds executed by them and seek cancellation thereof, thereby seeking to recover the lands. Their argument is presented under two propositions, the first of which is:

"The district courts of Oklahoma are without authority of law to confer rights of majority on Indian minors to enable them to convey allotted land inherited by said minors from the Indian allottee."

The foregoing proposition may be divided into two questions: (1) Did the district court have authority to confer majority rights on the plaintiffs by virtue of sections 1756 to 1759, O. S. 1931 (10 Okla. St. Ann. §§ 91-94)? (2) Did such majority rights, if legally conferred, authorize a conveyance of the allotted lands inherited from the deceased Cherokee allottee? In our judgment both of these questions must be answered in the affirmative.

In Armstrong v. Phillips et al., 82 Okla. 82, 198 P. 499, the validity and effect of such an order granting majority rights to a Cherokee Indian of 3/8

Indian blood was questioned. The challenged order had been entered upon the 5th day of June, 1909 (subsequent to the Act of May 27, 1908, 35 St. L. 312). We held the order valid, but mentioned that the same was ineffective to authorize a conveyance of allotted lands restricted under act of Congress. The reason for this limitation on the effect of the order is that the authority is derived from a state law and the authority thus vested in state courts does not comprehend an impairment of the restriction imposed by national legislation upon the alienation of lands allotted in severalty. This limitation on the effect of decrees conferring majority rights has also been recognized by this court in Mortgage & Debenture Co., Ltd., v. Burrows et al., 75 Okla. 94, 182 P. 238; Brewer v. Dodson, 60 Okla. 81, 159 P. 329; Egan v. Ingram et al., 58 Okla. 766, 161 P. 225; Bell v. Fitzpatrick, 53 Okla. 574, 157 P. 334, and by the federal court in Priddy v. Thompson, 204 F. 955.

In Posey et al. v. Brown et al., 169 Okla. 466, 37 P. 2d 633, we held a decree of a district court conferring majority rights on a minor of less than one-half Indian blood valid and effective to authorize a conveyance of lands bought with proceeds received from the sale of allotted lands.

It is thus definitely established by the decisions of this court that the district courts of the state may, under authority of sections 1756 to 1759, O. S. 1931, confer majority rights on minors who are members of the Five Civilized Tribes; but such orders or decrees do not impair restrictions against alienation of land imposed by national legislation.

The question being considered then resolves itself into an inquiry as to whether the lands inherited by the plaintiffs from the deceased allottee were restricted by the acts of Congress. In connection with the question, plaintiffs rely upon the doctrines of Brewer v. Dodson, supra, and Crow v. Hardridge et al., 73 Okla. 136, 175 P. 115. Those decisions were formulated upon the theory that section 6 of the Act of Congress of May 27, 1908 (35 St. L. 312,

ch. 199), which states that the "persons and property of minor allottees of the Five Civilized Tribes shall . . . be subject to the jurisdiction of the probate courts of the State of Oklahoma," embraces allotted lands inherited by such minor (s). It was thought by this court at the time Crow v. Hardridge et al., supra, was decided that this section of the act made the county court a federal agency with controlling supervision over the inherited as well as allotted lands of a minor allottee.

It is pointed out by the defendant that the plaintiffs in the case at bar were minors but not allottees, and for that reason this case is removed from the operation of section 6, supra, and thus distinguishable from the cited case. However, we deem it inappropriate to rest our decision on that distinction, since the doctrine of Brewer v. Dodson, supra, and Crow v. Hardridge, supra, has been repudiated by this court in Tuck et al. v. Sanders, 116 Okla. 218, 244 P. 31. We therein said:

". . . Certainly, an inherited interest of an unrestricted minor mixed blood Indian heir in lands allotted to his deceased ancestor, is 'property' in its general sense, but it cannot be contended that it constitutes property, within the meaning of the term as employed in section 6, supra, when the court holds that it is not necessary to resort to the probate court in order to divest such heir of his interest therein. . . .

"We have heretofore pointed out in this opinion that this rule with reference to inherited lands has been overruled, where the heirs were mixed blood Indians, including minors. . . ."

And in Armstrong v. Phillips et al., supra, we said in paragraph 2 of the syllabus:

"The provisions of the Act of Congress of May 27, 1908, removed the restrictions on the alienation of the allotments of minor Cherokee Indians having less than one-half Indian blood, and provided that such allotments may be sold under the order and supervision of the probate courts of the state, and in no other way; but necessarily no question arising under the act relates to any property acquired by such al-

lottees otherwise than by and through the allotment of the lands belonging to the Tribe, because the act does not purport to deal with any property except that."

Plaintiffs assert in substance that the discussion of the point in the two cases last referred to was unnecessary and is therefore dictum. This statement is not altogether unwarranted; however, we are of the opinion that the quoted expressions on the point are judicial, as distinguished from obiter dicta, and are therefore of highly persuasive, if not controlling, importance. See Brown v. Chicago & N. W. Ry. Co., 102 Wis. 137, 77 N. W. 748, 44 L. R. A. 579. See, also, Culpepper v. Ocheltree, 256 U. S. 483, 41 S. Ct. 579, 65 L. Ed. 1054. Be that as it may, we are of the opinion that the challenged expressions are correct statements of the law.

The Act of May 27, 1908, supra, made land from which restrictions on alienation had been removed subject to taxation. In Board of Com'rs of Pontotoc County v. Brashears et al., 91 Okla. 24, 215 P. 763, we were called upon to decide whether allotted lands inherited by a one-half blood Indian were taxable. We held them to be unrestricted and therefore taxable. It was said in paragraph 1 of the syllabus:

"The Act of Congress of May 27, 1908, provides: The death of any allottee of the Five Civilized Tribes operates to remove all restrictions upon the alienation of said allottee's land, with the limitation that no conveyance of any full-blood Indian heir in said land shall be valid unless approved by the court, having jurisdiction of the settlement of the estate of said deceased allottee. Held, that the death of the allottee in this case operated to remove all restrictions upon the alienation of said allottee's land."

In connection with the present question, also see Mills, Oklahoma Indian Land Laws, §§ 210, 223, and 224.

In the case of Chupco v. Chapman, 76 Okla. 201, 170 P. 259, this court held that section 1 of the act fixed the status of allotted lands as regarded restrictions on alienation during the lifetime of the allottee, and that section 9 fixed the status of allotted lands as regarded such restrictions after the death of the allottee.

While there are no decisions of the federal courts upon the precise question involved in the present case, the opinions of those courts reflect their construction of the Act of May 27, 1908, to be that the sections prior to section 9 have no application to inherited lands, except that in case of minor full-blood heirs, the court having jurisdiction of their guardianship may approve deeds to their inherited land. See Harris v. Bell, 254 U. S. 103, 41 S. Ct. 49, 65 L. Ed. 159, and Stewart v. Keyes, 295 U. S. 403, 55 S. Ct. 807, 79 L. Ed. 1507.

Upon consideration of the foregoing authorities, we conclude that allotted lands inherited by plaintiffs as minor Indian heirs of 1/32 degree Indian blood were, subsequent to the Act of May 27, 1908, supra, free from restrictions imposed by act of Congress, and that the only restrictions upon the conveyance of such lands by such minors were the usual restrictions imposed by the laws of the State of Oklahoma on all minors. We also conclude that such disability could be removed by appropriate procedure in the district court.

We, likewise, conclude upon consideration of Posey et al. v. Brown et al., supra, and other authorities hereinbefore reviewed, that the decree of majority rights authorized the sale of lands purchased by the ancestor with proceeds from the allotment and inherited along with said allotment by the plaintiffs. A restricted character was not even imparted to those lands in the hands of the allottee from whom they were inherited. Posey et al. v. Brown et al., supra. See Posey et ux. v. First Trust & Savings Bank et al., 158 Okla. 269, 12 P. 2d 913.

The second and concluding proposition of the plaintiffs is:

"The district courts of Oklahoma do not have jurisdiction under the Constitution and statutes of the State of Okla-

homa to confer rights of majority on any minor authorizing him to convey his property while his person and property are under guardianship under the jurisdiction of the county court."

Although a guardian appointed by a court is not entitled to his discharge until one year after the ward's majority (sec. 1514, O. S. 1931, 30 Okla. St. Ann. § 22), the power of a guardian appointed by the court, as in this case, solely upon the ground of minority, is suspended when the ward attains majority (sec. 1512, O. S. 1931, 30 Okla. St. Ann. § 20; Kersey v. McDougal, 79 Okla. 53, 191 P. 594), and a minor, immediately on becoming an adult, may execute a deed notwithstanding an attempted continuance of guardianship. Strawn et al. v. Brady et al., 84 Okla. 66, 202 P. 505.

The question is whether the district court can act in the matter of conferring majority rights and thus wholly or partially emancipate a minor when the minor is under guardianship.

The parties do not call our attention to any decision from this or any other jurisdiction where the precise question has been decided. Cases have been before this court where the situation was involved, but the point was not presented or discussed. See Brewer et al. v. Dodson et al., supra.

However, we do not believe the problem so difficult as to be incapable of solution independent of judicial precedent. Guardians are appointed by the county courts of this state to supervise the estates of minors because such wards are by reason of their age laboring under a legal disability to carry on their business or affairs in the same manner as adults. It is contemplated by the law, in case of appointment by reason of minority, that as soon as the disability ceases to exist the authority of the guardian is suspended. See section 1512, O. S. 1931, supra; also, Kersey v. McDougal, supra. The Legislature possesses the unquestioned authority to establish the ages at which majority shall be attained. In the exercise of that power it has enacted section 9393, O. S. 1931,

(15 Okla. St. Ann. § 13) which provides in part:

"Minors except as otherwise provided by law are: First. Males under twenty-one years of age. Second. Females under eighteen years of age."

Subsequent sections of the Code describe the inhibitions of minority.

The age thus prescribed is arbitrary. However, the lawmaking body has recognized the necessity of making exceptions in connection with the disability. The very statutes which fix the arbitrary ages provide that such age standards are subject to exceptions "otherwise provided by law." Emancipation of minors by decree of the district court, as authorized by sections 1756, O. S. 1931, et seq., may well be said to be contemplated by this exception clause in section 9393, supra.

With reference to the effect of such judicial emancipation, it is said in 14 R. C. L. page 219:

". . . In a number of jurisdictions statutes have been enacted empowering the courts to remove the disabilities of minors on petition filed for that purpose. Such statutory emancipation has the immediate effect of vesting the minor with the capacity which the law recognizes in persons of full age. . . ."

Thus, to the extent and for the purposes that a minor has been emancipated by decree of the district court, his minority has, in the eyes of the law, terminated, and to that extent the authority of a guardian over his estate is suspended.

The question does not present a problem of conflict of jurisdiction between the county and district courts. The jurisdiction or judicial power being exercised is not of the same character. The county court is exercising supervisory control during minority. It possesses no judicial power to emancipate the minor. Its authority over the subsequent alienation of the estates of unrestricted competent Indians terminates at majority. The district court, on the other hand, is exercising the power to terminate in whole or part the period

·of disability created by minority, and thus, for practical and legal purposes, is shortening the period of minority to the extent that it emancipates the minor.

The order of the district court, challenged in this case, was valid.

Affirmed.

WELCH, C. J., CORN, V. C. J., and RILEY, BAYLESS, HURST, and ARNOLD, JJ., concur. GIBSON, J., concurs in conclusion. OSBORN, J., dissents.